## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TYKEIYA DORE, MARC A. STEPHENS,

      Plaintiffs,

        v.

CHRIS BROWN ENTERTAINMENT, LLC d/b/a CHRISTOPHER BROWN ENTERTAINMENT, LLC, et al.,

      Defendants.

Case No. 24-10103-MCA-MAH

*Document Electronically Filed*

Motion Day: July 7, 2025

## MEMORANDUM OF LAW OF DEFENDANTS ALPHABET INC., GOOGLE LLC AND YOUTUBE, LLC IN SUPPORT OF MOTION TO DISMISS

*/s Alison L. Genova*
Alison L. Genova
Jeremy P. Auster (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel: (212) 497-7796
Fax: (212) 999-5801

*Counsel for Defendants Alphabet Inc., Google LLC, and YouTube, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 4

ARGUMENT ..................................................................... 10

I.  THE COMPLAINT FAILS TO STATE ANY COPYRIGHT
    INFRINGEMENT CLAIMS AGAINST GOOGLE .................................. 10

    A.  All of Plaintiffs' Copyright Claims Against Google Fail
        Because Google Cannot be Liable For Hosting The Non-
        Infringing "No Guidance" Videos On YouTube (Counts 1-3,
        10) ................................................................. 10

    B.  There Is No "Common Law" Copyright Claim (Count 1) ................. 11

    C.  Plaintiffs' Direct Infringement Claim Against Google Fails As
        A Matter Of Law (Count 2) ......................................... 12

    D.  Plaintiffs Fail To State A Claim For Vicarious Copyright
        Infringement (Count 3) ............................................ 14

    E.  Plaintiff Stephens' "Contributory Infringement" Claim Is Not A
        Proper Copyright Claim And Should Be Dismissed (Count 10). ...... 17

II. PLAINTIFFS' STATE-LAW CLAIMS SHOULD BE DISMISSED ......... 17

    A.  Most of Plaintiffs' State-Law Claims Are Preempted by the
        Copyright Act (Counts 4, 6-9, 11). ................................ 18

    B.  Section 230 Bars The State-Law Claims Based On The
        Temporary Removal of Stephens' YouTube Account And
        "Comparison Video" (Counts 4, 6-9, 11) ........................... 22

    C.  Plaintiffs' State-Law Claims Are Insufficiently Pled and Should
        Be Dismissed. ..................................................... 25

        1.  *The Unjust Enrichment Claim Fails Because Plaintiffs
            Merely Recite the Elements Without Factual Support
            (Count 4).* ................................................... 25

i

2.    *Plaintiffs' Defamation Claim Fails Because They Do Not And Cannot Allege That Google Made Publications To A Third Party Or Any Defamatory Statements, and Plaintiffs Fail to Allege Damages* (Count 5). .......................... 26

3.    *Plaintiffs Cannot Maintain Claims for Intentional and Negligent Infliction of Emotional Distress* (Count 6). ............. 30

4.    *Plaintiffs Cannot State a Breach of Contract Claim* (Count 7). ................................................................. 32

5.    *Google Owes No Fiduciary Duty to Plaintiffs* (Count 8). ....... 34

6.    *Plaintiffs' Fraud Claim Is Deficient* (Count 9) ....................... 35

7.    *Plaintiffs' Conversion Claim is Deficiently Pled* (Count 11). ................................................................. 37

III.   THE COMPLAINT VIOLATES RULE 8 .................................................. 38

IV.   ALL CLAIMS AGAINST ALPHABET MUST BE DISMISSED ............. 39

V.    CONCLUSION ............................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*30 River Ct. E. Urb. Renewal Co. v. Capograsso,*
  383 N.J. Super. 470 (App. Div. 2006) .........................................................27

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................26

*Beautiful Slides, Inc. v. Allen,*
  2017 WL 3782304 (N.D. Cal. Aug. 31, 2017) .............................................21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................26

*Bello v. United Pan Am Fin. Corp,*
  2021 WL 2549243 (D.N.J. June 22, 2021) ..............................................27, 29

*Best Carpet Values, Inc. v. Google, LLC,*
  90 F.4th 962 (9th Cir. 2024) .........................................................................37

*Cambridge Mutual Fire Ins Co. v. Stihl Inc.,*
  2023 WL 5928319 (D.N.J. Sept. 12, 2023) ..................................................39

*Cmty. for Creative Non-Violence v. Reid,*
  490 U.S. 730 (1989) ......................................................................................12

*D'Angelo v. Ocwen Loan Servicing, LLC,*
  2017 WL 712781 (N.J. Super. Ct. App. Div. Feb. 23, 2017) .......................31

*D.M. ex rel. Ray v. Philadelphia Hous. Auth.,*
  613 F. App'x 187 (3d Cir. 2015) .....................................................................4

*Daley v. Firetree, Ltd.,*
  2006 WL 148879 (M.D. Pa. Jan. 19, 2006) ............................................18, 19

*Daniels v. Alphabet Inc., et al.,*
  2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) .............................................33

*DeGroat v. Cooper,*
  2014 WL 1922831 (D.N.J. May 14, 2014) ...................................................30

*Despot v. Baltimore Life Ins. Co.,*
  2016 WL 4148085 (W.D. Pa. June 28, 2016) ..............................................23

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC,*
  870 F.3d 978 (9th Cir. 2017) ...........................................................................5

*Dyroff v. Ultimate Software Grp., Inc.,*
  934 F.3d 1093 (9th Cir. 2019) .......................................................................35

*Ebeid v. Facebook, Inc.*,
　2019 WL 2059662 (N.D. Cal. May 9, 2019)..........................................25

*Ellison v. Robertson*,
　357 F.3d 1072 (9th Cir. 2004) ............................................................10, 15

*Evans v. NBCUniversal Media, LLC*,
　2021 WL 4513624 (C.D. Cal. July 23, 2021) ...........................................20

*Falat v. Cnty. of Hunterdon*,
　2013 WL 1163751 (D.N.J. Mar. 19, 2013) ...........................................12, 14

*Garcia v. Google, Inc.*,
　786 F.3d 733 (9th Cir. 2015) .......................................................................17

*Giddings v. Vision House Prod., Inc.*,
　2007 WL 2274800 (D. Ariz. Aug. 7, 2007) ................................................21

*Green v. Am. Online (AOL)*,
　318 F.3d 465 (3d Cir. 2003) .......................................................................23

*Hall v. YouTube, LLC*,
　2025 WL 1482007 (N.D. Cal. May 5, 2025)...................................24, 33, 34

*HV Assocs. LLC v. PNC Bank, N.A.*,
　2018 WL 1243984 (D.N.J. Mar. 8, 2018) *on reconsideration*,
　2018 WL 2090690 (D.N.J. May 4, 2018)....................................................30

*In re U.S. Vision Data Breach Litig.*,
　732 F. Supp. 3d 369 (D.N.J. 2024).......................................................34, 35

*Inventory Recovery Corp. v. Gabriel*,
　2012 WL 2990693 (D.N.J. July 20, 2012) ..................................................37

*Kabbaj v. Google, Inc.*,
　2014 WL 1369864 (D. Del. Apr. 7, 2014),
　*aff'd*, 592 F. App'x 74 (3d Cir. 2015) .........................................................23

*Karupaiyan v. Atlantic Realty Dev. Co., Inc.*,
　2020 WL 13728036 (D.N.J. Jan. 17, 2020),
　*aff'd*, 827 F. App'x 165 (3d Cir. 2020) .......................................................39

*Katz v. Ambit Northeast, LLC*,
　2020 WL 5542780 (D.N.J. Sept. 16, 2020)...........................................26, 35

*Klauber Bros., Inc. v. URBN US Retail LLC*,
　2023 WL 1818472 (S.D.N.Y. Feb. 8, 2023) .........................................14, 16

*Kremer v. Alphabet Inc.*,
　2024 WL 923900 (M.D. Tenn. Mar. 4, 2024)............................................40

*Lancaster, v. Alphabet Inc.*,
　2016 WL 3648608 (N.D. Cal. July 8, 2016) .........................................24, 40

*LoDuca v. Pichai*,
　2022 WL 2757683 (W.D. Pa. July 14, 2022) ................................................12

*Lopez v. Bonanza.com, Inc.*,
　2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ............................................15

*Manigault-Johnson v. Google, LLC*,
　2019 WL 3006646 (D.S.C. Mar. 31, 2019) ..................................................40

*McLaughlin v. Rosanio, Bailets & Talamo, Inc.*,
　331 N.J. Super. 303 (App. Div. 2000) ....................................................28, 29

*Mehta v. Fairleigh Dickinson Univ.*,
　2012 WL 458421 (D.N.J. Feb. 9, 2012),
　*aff'd in part, vacated in part, remanded on other grounds by*,
　530 F. App'x 191 (3d Cir. 2013) .................................................................27

*Mention v. Gessell*,
　714 F.2d 87 (9th Cir. 1983) ........................................................................11

*Mercola.com, LLC v. Google LLC*,
　2023 WL 5680112 (N.D. Cal. Sept. 4, 2023),
　*aff'd*, 2024 WL 2745208 (9th Cir. May 29, 2024) ......................................38

*Mezey v. Twitter, Inc.*,
　2018 WL 5306769 (S.D. Fla. July 19, 2018) ..............................................25

*Mills v. Alphabet Inc.*,
　2018 WL 1569838 (S.D.N.Y. Mar. 28, 2018)..............................................20

*Mortg. Market Guide, LLC v. Freedman Report, LLC*,
　2008 WL 2991570 (D.N.J. July 28, 2008) ..................................................21

*Murphy v. Twitter, Inc.*,
　60 Cal. App. 5th 12 (2021) .........................................................................24

*New Jersey Citizen Action v. Schering-Plough Corp.*,
　367 N.J. Super. 8 (App. Div. 2003) ............................................................36

*Nieves v. Lyft, Inc.*,
　2018 WL 2441769 (D.N.J. May 31, 2018)..................................................36

*Nwosuocha v. Glover*,
　2024 WL 2105473 (2d Cir. May 10, 2024) ..................................................6

*Obado v. Magedson*,
　612 F. App'x 90 (3d Cir. 2015) ..............................................................23, 24

*Parker v. Google, Inc.*,
　242 F. App'x 833 (3d Cir. 2007) .................................................... *Passim*

*Parker v. Google, Inc.*,
　422 F. Supp. 2d 492 (E.D. Pa. 2006),
　*aff'd*, 242 F. App'x 833 (3d Cir. 2007) ..........................................14, 15, 16

*Parker v. Paypal, Inc.*,
   2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) ...................................16, 19, 21

*Parker v. Yahoo!, Inc.*,
   2008 WL 4410095 (E.D. Pa. Sept. 25, 2008)......................................10

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ................................................13, 16

*Phillips v. New Jersey Transit*,
   2021 WL 1661087 (D.N.J. Apr. 28, 2021).....................................31

*Prelle v. United States*,
   2022 WL 16958896 (3d Cir. Nov. 16, 2022) ................................39

*Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*,
   449 F. Supp. 3d 449 (D.N.J. 2020)..........................................25, 26

*Riggs v. MySpace, Inc.*,
   444 F. App'x 986 (9th Cir. 2011) .............................................25

*Salek v. Passaic Collegiate Sch.*,
   255 N.J. Super. 355 (App. Div. 1992)......................................30

*Soobzokov v. Lichtblau*,
   2016 WL 614411 (D.N.J. Feb. 16, 2016) ................................28, 29

*Tegg Corp. v. Beckstrom Elec. Co.*,
   650 F. Supp. 2d 413 (W.D. Pa. 2008) .......................................21

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
   903 F.3d 333 (3d Cir. 2018) ................................................39, 40

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ..................................................13

*W.H.P.M., Inc. v. Immunostics, Inc.*,
   2020 WL 359146 (D.N.J. Jan. 22, 2020)....................................37

*Ward v. Zelikovsky*,
   136 N.J. 516 (1994) ...........................................................29

*Weerahandi v. Shelesh*,
   2017 WL 4330365 (D.N.J. Sept. 29, 2017)..................................23

*Winstead v. Jackson*,
   2011 WL 4407450 (D.N.J. Sept. 20, 2011),
   *aff'd*, 509 F. App'x 139 (3d Cir. 2013) ............................18, 20, 21

*Witherspoon v. Rent-A-Ctr., Inc.*,
   173 F. Supp. 2d 239 (D.N.J. 2001).............................................31

*Zimmerman v. Facebook, Inc.*,
   2020 WL 5877863 (N.D. Cal. Oct. 2, 2020) ................................25

## STATUTES

17 U.S.C. § 102 ............................................................................17, 19

17 U.S.C. § 106 ........................................................................17, 18, 19

17 U.S.C. § 201(d) ...............................................................................5

17 U.S.C. § 204(a) ...............................................................................5

17 U.S.C. § 301(a) .........................................................................11, 18

17 U.S.C. § 411(a) ...............................................................................6

17 U.S.C. § 512 ....................................................................................1

47 U.S.C. § 230 ........................................................................... *Passim*

Copyright Act of 1976 .................................................................. *Passim*

New Jersey Consumer Fraud Act ......................................................35, 36

## RULES

Fed. R. Civ. P. 8 ........................................................................ *Passim*

Fed. R. Civ. P. 9(b) ...........................................................................37

Fed. R. Civ. P. 10(c) ..........................................................................11

Fed. R. Civ. P. 12(b)(6)...................................................................4, 25

## <u>INTRODUCTION</u>

Plaintiffs' 200-plus paragraph Complaint (ECF No. 1) takes a kitchen-sink approach to asserting claims against Google (defined below) under the Copyright Act and New Jersey law, relying exclusively on scattershot, vague, and improper group allegations. The Complaint is a textbook violation of Federal Rule of Civil Procedure 8(a)(2)'s requirement of a "short and plain statement of the claim." After sifting through the allegations, however, it is clear that Plaintiffs fail to state any legally cognizable cause of action against Google.

Plaintiff Tykeiya Dore is a self-proclaimed singer-songwriter who claims to own the copyright in a song titled "I Got It." Dore alleges that certain non-Google defendants, including Defendant Chris Brown, copied her work to create a song titled "No Guidance," and thereby infringed Plaintiffs' copyright.

Google LLC operates the YouTube platform, a popular online service that allows users to create "channels" and post videos to their channels. *Five years* after Chris Brown or his agent uploaded the "No Guidance" sound recording and music video to Brown's YouTube channel, Plaintiff Marc A. Stephens submitted "takedown notices" to Google under the Digital Millennium Copyright Act, 17 U.S.C. § 512 (the "DMCA"), alleging that the videos infringed and requesting that Google remove them from the platform. Stephens' notices linked to a "comparison video" on his YouTube channel that is supposedly "evidence" of the infringement.

1

Chris Brown submitted a DMCA counter-notification explaining that the infringement charge is meritless. Accordingly, Google allowed the "No Guidance" videos to remain on YouTube. Google also temporarily suspended Stephens' YouTube channel for approximately one month after he flooded the service with additional takedown notices.

Based solely on this story, Plaintiffs assert 12 baseless claims against Google. Plaintiffs' copyright infringement claims against Google (Counts 1-3, 10) should be dismissed because, as a threshold matter, Plaintiffs fail to plausibly allege that "No Guidance" infringes their copyright, as set forth in the motion to dismiss filed by the Music Defendants (defined below). ECF No. 43. Plaintiffs' infringement claims against Google are derivative of the claims against the Music Defendants and premised on Google hosting the "No Guidance" videos on YouTube. The claims thus sound in secondary liability. But if Plaintiffs cannot state a claim for direct infringement, their secondary claims against Google must fail too.

Plaintiffs' infringement claims fail for additional reasons as well. The "Common Law" claim (Count 1) is preempted by the Copyright Act. The direct infringement claim (Count 2) fails because Google cannot be directly liable for passively hosting material uploaded by third-party YouTube users. The vicarious infringement claim (Count 3) fails because Plaintiffs' group allegations fall far short

of adequately pleading the requisite elements as to Google. And the "contributory infringement" claim (Count 10) is not a real copyright claim at all.

Plaintiffs' eight state-law claims fare no better. They are replete with irrelevant, and sometimes indecipherable, allegations that have no bearing on their elements. But the premise of virtually all the claims appears to be that Google violated New Jersey law because it (i) hosted the "No Guidance" videos on YouTube (Counts 4, 6-9, and 11) and/or (ii) removed Stephens' YouTube channel and video for one month (*id.*). All claims premised on the former must be dismissed because they are merely variants of Plaintiffs' copyright claims, and thus preempted by the Copyright Act. And all claims premised on the latter are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which—along with YouTube's Terms of Service—precludes liability based on Google's decisions regarding what third-party channels and content to host, or not host, on YouTube.

Even apart from these cross-cutting defenses, Plaintiffs fail to adequately plead any of their state-law claims. The defamation claim (Count 5), to which the Complaint ascribes prominence, is based on non-actionable statements of opinion that Google made in emails to Stephens, and which *he*, not Google, published to third parties. The other state-law claims fail for similarly glaring reasons.

Further, as noted, the Complaint should be dismissed for violating Rule 8.

Finally, none of Plaintiffs' claims against Alphabet Inc. are viable because it is black-letter law that a parent company cannot be held liable for the alleged conduct of its subsidiaries based solely on the parent-subsidiary relationship.

For these reasons, Google respectfully requests that the Court dismiss all of Plaintiffs' claims against Google.

## **BACKGROUND**

***Google, YouTube, and Alphabet.*** Google LLC is a leading provider of Internet services, including the YouTube platform, which allows users "to discover, watch and share videos and other content." Declaration of Jeremy P. Auster, Ex. A (YouTube Terms of Service ("TOS")) at 3.[1] Alphabet. Inc, a stock holding company, is the ultimate parent company of Google LLC and YouTube, LLC (all together, "Google"). Compl. ¶ 82.

***Plaintiffs.*** Plaintiff Tykeiya Dore is a self-described "singer, songwriter, and producer." *Id.* ¶ 6. The Complaint provides virtually no information about Plaintiff Marc A. Stephens. It alleges that he resides in New Jersey and that Dore "hired" him in May 2024. *Id.* ¶¶ 7, 70. Stephens is not a licensed attorney, but has represented himself as Dore's "Attorney in Fact." *See* Compl., Exs. 8, 11, 13, 18-21, 24. Both Plaintiffs were granted *in forma pauperis* status.

---

[1] YouTube's current TOS is repeatedly quoted in the Complaint (¶¶ 169-70, 178-79, 184-85, 190-91, 197, 203, 209), and thus is incorporated by reference and is properly before the Court on a Rule 12(b)(6) motion. *See D.M. ex rel. Ray v. Philadelphia Hous. Auth.*, 613 F. App'x 187, 189 n.6 (3d Cir. 2015).

***Plaintiffs' Claims Against Google.*** Plaintiffs allege that Dore wrote the song "I Got It" in 2015, uploaded it to YouTube in March 2017, and registered it as a "musical work" with the U.S. Copyright Office in July 2019. Compl. ¶¶ 29-33; Ex. 1. The copyright registration for "I Got It" identifies Dore as the sole copyright claimant and author of the musical work. Ex. 1. Stephens referred to the song as "my client's copyrighted work" in pre-litigation correspondence (Ex. 8), but now vaguely alleges an ownership interest.[2]

According to Plaintiffs, between August 2018 and May 2019, certain non-Google defendants, including Chris Brown, "created the song titled, 'No Guidance.'" *Id.* ¶¶ 34-38. Plaintiffs claim that the "No Guidance" song and sound recording infringe their copyrighted musical work, alleging that the "No Guidance" chorus is "a continuous use of the word 'YOU GOT IT'" that purportedly copies the phrase "I GOT IT" from the chorus of Plaintiffs' work, and that "No Guidance" "uses the same chord progressions, tempo, pitch, key, melody, harmony, rhythm,

---

[2] It is unclear whether Stephens has an interest in "I Got It" sufficient to confer standing to sue for infringement. *See DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017) (ownership is "a substantive element" of claim and "a necessary predicate for standing to bring the claim"). The Complaint refers to "I Got it" as *Dore*'s song (*e.g.*, Compl. ¶ 70), and Stephens alleges only that he is the "owner[] of the Common Law Copyright of the song" (*id.* ¶ 110). But there is no such thing as a "common law copyright." *See infra* § I.B. In a declaration, Dore offers the unpleaded assertion that she "assigned 50% of my copyright" to Stephens (ECF No. 53-3), but does not say when (or identify the writing required for such an assignment). *See* 17 U.S.C. §§ 201(d), 204(a).

structure, phrasing, and lyrics as" "I Got It." *Id.* ¶¶ 40, 64; *see also id.* ¶¶ 65-77.[3]

Plaintiffs do not and could not allege that Google had anything to do with the creation of "No Guidance." *See id.* ¶¶ 35-38, 46-63, Exs. 4-5 (identifying other defendants as authors and copyright owners). Instead, all of Plaintiffs' claims against Google arise out of its operation of the YouTube platform, and its alleged hosting of the purportedly infringing content.

Plaintiffs allege that Chris Brown or his agent uploaded the "No Guidance" sound recording and music video to Brown's YouTube channel on June 8, 2019 and July 26, 2019, respectively. Compl. ¶¶ 41, 44, 46, 61, 107; Exs. 3, 22. ***Five years later***, on May 29, 2024, one week after Dore "hired" Stephens (Compl. ¶ 70), Stephens emailed YouTube a DMCA "takedown notice," alleging "No Guidance" infringed "I Got It" and requesting that YouTube remove the "No Guidance" videos from Chris Brown's channel. Ex. 8. Stephens' takedown notice included a link to a "comparison video" on his own YouTube channel purporting to illustrate the similarities between "I Got It" and "No Guidance." *Id* ¶¶ 40, 71, 98; Exs. 2, 8. A short time later, Chris Brown's counsel submitted a letter—or DMCA counter

---

[3] Plaintiffs also allege without basis that "No Guidance" infringes their purported copyright in the "I Got It" sound recording, *see* Count 1, Prayer for Relief #2, but nowhere do they allege they have a registered copyright in the sound recording, as required to sue for infringement. 17 U.S.C. § 411(a). *See Nwosuocha v. Glover*, 2024 WL 2105473, at *2 (2d Cir. May 10, 2024) (the "distinction" between a musical work and sound recording "is important" because they are "different artistic works that can be copyrighted by different creators and are infringed in different ways").

notification—to Google, explaining why "No Guidance" is non-infringing and requesting that the videos remain on YouTube. Compl. ¶ 92, Ex. 17.

Plaintiffs allege that between May 28 and July 3, 2024, Stephens exchanged numerous emails with Google regarding his original and subsequent takedown requests. *See* Compl. ¶¶ 87-91, 93, 97, 98; Exs. 12-16, 18, 22-23. As alleged, Google indicated in emails sent directly (and only) to Stephens that it would not remove the "No Guidance" videos from YouTube (*id.*), and expressed concern that "some info" in Stephens' "takedown request" "may be fraudulent," Compl. ¶¶ 87, 89. On June 2, Google informed Stephens that "our team has reviewed your activity and found your channel is in violation of YouTube's Terms of Service," and that "[a]s a result, your YouTube channel has been terminated." *Id.* ¶ 91 & Ex. 12; *see also* Compl. ¶ 93; Exs. 14, 18 (subsequent emails from Google to Stephens regarding termination). Stephens emailed Google to appeal the termination. Compl. ¶ 88; Ex. 13. On July 3, 2024, roughly one month after the termination, Google emailed Stephens, explaining that "after looking into your appeal, we've concluded that your channel has been terminated incorrectly and we've reinstated your channel." Compl. ¶ 98 & Ex. 23. Stephens' channel and his "comparison video" are currently live on YouTube. Compl. ¶¶ 40, 71; Ex. 2.

Based on the foregoing, Plaintiffs assert three copyright infringement claims against "All Defendants" (relying solely on group allegations that lump all twenty-

one defendants together): (i) a "common law" infringement claim (Count 1); (ii) an apparent claim for direct infringement (Count 2); and (iii) a claim for vicarious copyright infringement (Count 3). Stephens also asserts a so-called claim for "contributory copyright infringement" against Google only (Count 10).

Plaintiffs also assert eight state-law claims against Google: unjust enrichment (Count 4), defamation *per se* (Count 5), intentional and negligent infliction of emotional distress (Counts 6),[4] breach of contract (Count 7), breach of fiduciary duty (Count 8), common-law fraud (Count 9), and conversion (Count 11). These claims are difficult to parse. The "Wherefore" paragraph in certain claims indicates they are pled on behalf of both Plaintiffs, *see* Counts 4-5, 6 (IIED), 9, 11, even where there is no apparent basis for each to assert a claim—*e.g.*, Dore joins the defamation claim, but Google made no alleged statements about her. The same clause in other claims indicates that they are pled on behalf of Stephens only, *see* Counts 6 (NIED), 7-8, yet those claims alternatively reference both "Plaintiff" and "Plaintiffs." *See, e.g.*, Compl. ¶¶ 176, 179-80, 183, 185-86, 188, 191-92.

Additionally, most of the state-law claims contain identical, copy-pasted allegations that have no bearing on the claim's elements, such as vague references to YouTube's Terms of Service, Plaintiffs' "right to privacy," and "physical,

---

[4] The Complaint (¶¶ 164-80) labels both of the separate IIED and NIED claims as Count 6.

psychological and emotional distress." *See, e.g.*, *id.* ¶¶ 151, 163, 168-70, 177-79, 183-85, 189-91, 197, 209. Notwithstanding these deficiencies, the premise of virtually all of the state-law claims is that Google violated New Jersey law because it hosted the purportedly infringing "No Guidance" videos on YouTube and/or because it terminated Stephens' YouTube account for approximately one month.

***The Music Defendants' Motion to Dismiss.*** On March 28, 2025, Songs of Universal, Inc., Sony Music Publishing (US) LLC, Sony Music Entertainment, and Chris Brown Entertainment, LLC (together, the "Music Defendants") moved to dismiss Plaintiffs' copyright infringement claims with prejudice. *See* ECF Nos. 43 (Motion); 57 (Reply). The Music Defendants argue, *inter alia*, that Plaintiffs' copyright claims fail as a matter of law because Plaintiffs cannot allege substantial similarity between any protectable elements of "I Got It" and "No Guidance," and because the Complaint fails to allege that the "No Guidance" creators had access to Plaintiffs' work. ECF No. 43-1 at 3-4, 7-10, 22-38; ECF No. 57 at 1-2, 6-14.[5]

---

[5] The Music Defendants also move to dismiss for lack of jurisdiction and improper venue, or, in the alternative, to transfer this action to the Southern District of New York if the Court finds that any of the copyright claims survive dismissal. ECF No. 43-1 at 10-19, 39-40; ECF No. 57 at 3-6, 15. As discussed herein, all of Plaintiffs' claims against Google should be dismissed. However, Google would not oppose a transfer of the action to S.D.N.Y. should the Court determine that any of Plaintiffs' claims against the Music Defendants and Google survive dismissal. Because the claims against Google are largely derivative of the claims against the Music Defendants, judicial economy is served by litigating them in a single forum.

# ARGUMENT

## I.  THE COMPLAINT FAILS TO STATE ANY COPYRIGHT INFRINGEMENT CLAIMS AGAINST GOOGLE

### A.  All of Plaintiffs' Copyright Claims Against Google Fail Because Google Cannot be Liable For Hosting The Non-Infringing "No Guidance" Videos On YouTube (Counts 1-3, 10).

All of Plaintiffs' copyright claims against Google must be dismissed because Plaintiffs fail to plausibly allege that "No Guidance" infringes their work. Courts "recognize three doctrines of copyright liability: direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Despite Plaintiffs' group pleading and mislabeled claims (*infra* § III), their copyright claims against Google are all premised on its alleged hosting of the "No Guidance" videos on YouTube, and thus sound in secondary liability. But a secondary infringement claim "cannot stand without plausible allegations of third-party direct infringement." *Parker v. Yahoo!, Inc.*, 2008 WL 4410095, at *5 (E.D. Pa. Sept. 25, 2008).

Google joins and incorporates by reference the arguments in the Music Defendants' motion to dismiss explaining that Plaintiffs' direct infringement claim fails as a matter of law because Plaintiffs do not and cannot plausibly allege that the Music Defendants had access to Plaintiffs' work or that substantial similarity exists between protectable elements of Plaintiffs' work and Defendants' works. ECF No.

43-1 at 3-4, 7-10, 22-38; ECF No. 57 at 1-2, 6-14; *see* Fed. R. Civ. P. 10(c).[6] Because Plaintiffs fail to plausibly allege that the Music Defendants' works infringe their copyright, Plaintiffs cannot state a claim against Google—under any theory of infringement—for hosting those works on YouTube.

**B.    There Is No "Common Law" Copyright Claim (Count 1).**

Plaintiffs' copyright claims against Google also fail of their own accord. Plaintiffs' "common law" copyright claim (Compl. ¶¶ 110-25) must be dismissed because "[t]he Copyright Act of 1976 preempts common law copyright claims" for all causes of action arising after January 1, 1978. *Mention v. Gessell*, 714 F.2d 87, 90 (9th Cir. 1983); *see* 17 U.S.C. § 301(a) (after January 1, 1978 "no person is entitled to" copyright protection "under the common law"); *Cmty. for Creative Non-*

---

[6] Specifically, Google adopts and incorporates by reference the Music Defendants' arguments explaining that Plaintiffs fail to plausibly allege that they had access to Plaintiffs' work because the low number of views and streams of Plaintiffs' song and music video "fail to meet the high standard of widespread dissemination" such that "the defendants can be presumed to have seen or heard it," ECF No. 43-1 at 25, 26 (citation omitted), and because Plaintiffs cannot establish access through a third-party intermediary theory (i) with general assertions that certain defendants "both are allegedly from New York and work in the music industry," *id.* at 27, (ii) through unsupported allegations that the same writers or videographers worked on both works, or (iii) based on Dore's uncle's supposed provision of Plaintiffs' song to a defendant after "No Guidance" was released, *id.* at 28; *see also* ECF No. 57 at 6-7. As for substantial similarity, as the Music Defendants explain, short commonplace words like "got it" are not protectable, ECF No. 43-1 at 30-32, and neither are the other basic musical elements that Plaintiffs vaguely allege were copied, *id.* at 34-36, and no ordinary, reasonable person would find the two songs to be substantially similar, *id.* at 36; *see also* ECF No. 57 at 10-13.

*Violence v. Reid*, 490 U.S. 730, 731 (1989) (Copyright Act "broadly preempt[s] state statutory and common-law copyright regulation"). Plaintiffs' "claim[] under common law" must therefore be "dismissed with prejudice." *LoDuca v. Pichai*, 2022 WL 2757683, at *3 (W.D. Pa. July 14, 2022).

### C. Plaintiffs' Direct Infringement Claim Against Google Fails As A Matter Of Law (Count 2).

Count 2 must also be dismissed because it fails to state any viable claim against Google. Count 2 cites the standard for direct infringement (Compl. ¶ 126), but then gestures at theories of secondary infringement (*id.* ¶¶ 133-34; Prayer for Relief #3), while relying solely on group allegations that fail to delineate which theory or allegations pertain to each defendant. Plaintiffs' failure to plainly identify the basis for their claim against Google requires dismissal under Rule 8. *See infra* § III; *Falat v. Cnty. of Hunterdon*, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) ("Plaintiffs cannot merely state that '*Defendants* did *x*'—they must specifically allege *which* Defendants engaged in what wrongful conduct.") (citation omitted).

To the extent that Count 2 alleges anything against Google, it can only be a claim for direct infringement, since Plaintiffs elsewhere charge Google with vicarious (Count 3) and contributory (Count 10) infringement. But any direct infringement claim against Google fails as a matter of law. As the Third Circuit has held, "to state a direct copyright infringement claim, a plaintiff must allege volitional conduct on the part of the defendant," *Parker v. Google, Inc.*, 242 F. App'x 833, 836

(3d Cir. 2007), which is "commonly referred to as" "causation," *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019). As a provider of an automated service (YouTube) that hosts content uploaded by third-party users (here, the "No Guidance" videos), Google cannot be liable for direct infringement because "passively storing material at the direction of users in order to make that material available to other users upon request, or automatically copying, storing, and transmitting materials upon instigation by others," is not "volitional" conduct, and "does not render an [Internet service provider] strictly liable for copyright infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668-70 (9th Cir. 2017) (brackets in original; citations omitted); *accord VHT*, 918 F.3d at 732 ("direct copyright liability for website owners" cannot arise from the "general operation of [its website]," but requires that the website be "*actively* involved in the infringement") (cleaned up).

In *Parker v. Google*, the Third Circuit affirmed the dismissal with prejudice of a direct infringement claim against Google based on its alleged hosting of a third-party posting to an online bulletin board, confirming that an "internet service provider ('ISP')" does not engage in "any volitional conduct" and "should not be found liable as a direct infringer when its facility is used by a subscriber to violate a copyright without intervening conduct of the ISP." 242 F. App'x at 836-37 (citation omitted). Any direct infringement claim against Google for hosting third-party

13

videos uploaded to Chris Brown's YouTube channel fails for the same reason. Count 2 should be dismissed with prejudice for want of volitional conduct or causation allegations against Google.

### D. Plaintiffs Fail To State A Claim For Vicarious Copyright Infringement (Count 3).

Plaintiffs also fail to state a vicarious infringement claim against Google. To do so, Plaintiffs must plausibly allege Google has (i) "the right and ability to supervise and/or control the infringing activity" and (ii) received "a direct financial benefit from another's infringing activity." *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 499 (E.D. Pa. 2006) (citations omitted), *aff'd*, 242 F. App'x 833, 837 (3d Cir. 2007). Plaintiffs again rely on group allegations against all twenty-one "Defendants." Compl. ¶¶ 138-47. That group pleading approach is, by itself, fatal to a claim against *Google*. *See Klauber Bros., Inc. v. URBN US Retail LLC*, 2023 WL 1818472, at *8 (S.D.N.Y. Feb. 8, 2023) ("Plaintiff's vague allegations regarding the roles that the Defendants played in any alleged infringement are insufficient support for its vicarious [] infringement claim."); *Falat*, 2013 WL 1163751, at *3. Plaintiffs cannot, in any event, mask their failure to plead the elements of vicarious liability against Google.

***Plaintiffs Do Not Allege Control.*** With respect to the "control" prong of the vicarious liability test, Plaintiffs offer a single allegation: "Defendants have the right and ability to supervise the activities of those engaged in the infringement, including,

without limitation, contractual rights, license agreement(s), and/or other artistic or approval rights." Compl. ¶ 142. This sweeping allegation—which implausibly suggests each of the *twenty-one* defendants had control over the conduct of *every other* defendant based on unspecified "agreements" "and/or" "rights"—does not suffice to articulate a theory of control as to *Google* (which had nothing to do with the allegedly unlawful copying of Plaintiffs' work to create "No Guidance"). *See Parker*, 422 F. Supp. 2d at 500 (dismissing vicarious infringement claim against Google where complaint failed to "allege specific conduct by a third party which Google may have had the right and ability to supervise"); *Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *23-24 (S.D.N.Y. Sept. 30, 2019) (similar, where plaintiff failed to allege "the scope of [defendant's] control, if any, over the allegedly infringing activity") (citation omitted).

***Plaintiffs Do Not Allege A Direct Financial Benefit.*** Plaintiffs similarly fail to allege that Google received a direct financial benefit from the other defendants' alleged infringement of their work. "The essential aspect" of that inquiry "is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Ellison*, 357 F.3d at 1079. Here too, Plaintiffs rely on a single, group allegation: "Defendants derive a direct financial benefit from this infringement, including without limitation, revenue sharing and/or royalty payments for each infringing version sold." Compl. ¶ 141. This too does not allege a theory as

to *Google*. *Klauber Bros.*, 2023 WL 1818472, at *8 (rejecting "mere boilerplate" group allegations against all defendants regarding "sales" of allegedly infringing products). Elsewhere in the Complaint, Plaintiffs assert that Google "generate[s] advertising revenue based on views received on videos uploaded to their platform on YouTube, and charges for its services and makes money on the ads it sells on its search engine." Compl. ¶ 86. But these allegations merely describe in generalized fashion how Google (and many online services) generates revenue; they do not suggest that Google received a financial benefit directly from the other defendants' allegedly infringing activity—*e.g.*, by establishing that "anyone subscribed to [YouTube] because of" the allegedly infringing videos. *Perfect 10*, 847 F.3d at 674.

Courts have rejected similar allegations against Google as insufficient for pleading a direct financial benefit. *See Parker*, 422 F. Supp. 2d at 500 (rejecting "vague and conclusory" allegations "that Google's advertising revenue is directly related to the number of Google users and that the number of users 'is dependent directly on Google's facilitation of and participation in the alleged infringement.'"); *accord Parker v. Paypal, Inc.*, 2017 WL 3508759, at *5 (E.D. Pa. Aug. 16, 2017) (dismissing vicarious infringement claim "premised on conclusory allegations" that failed to establish defendants "have an 'obvious and direct financial interest in the exploitation of copyrighted materials.'").

16

### E.   Plaintiff Stephens' "Contributory Infringement" Claim Is Not A Proper Copyright Claim And Should Be Dismissed (Count 10).

Stephens also purports to assert a "contributory infringement" claim against Google on behalf of himself only. Compl. ¶¶ 199-204. But Count 10 is not a true copyright claim. Aside from rote case-law quotations (*id.* ¶¶ 199-202), Stephens alleges nothing related to the elements of contributory infringement. Instead, he relies on allegations copy-and-pasted from Plaintiffs' state-law claims, which fault Google for "illegal concealment of evidence" when it "accused Marc Stephens of fraud and deleted Plaintiffs' comparison video, and terminated Stephens YouTube Account." *Id.* ¶ 201. Stephens further alleges "physical, psychological and emotional distress" from Google's alleged "failure to comply with" unidentified "requirements of [YouTube's] Terms of Service Agreement." *Id.* ¶ 203. None of these grievances is redressable under copyright law. *See, e.g.*, 17 U.S.C. §§ 102, 106 (setting forth "[s]ubject matter of copyright"); *Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015) ("authors cannot seek emotional distress damages under the Copyright Act."); *see infra* § II.A. Count 10 should be dismissed for failing to state a claim for contributory infringement.

## II.   PLAINTIFFS' STATE-LAW CLAIMS SHOULD BE DISMISSED

Plaintiffs also fail to state any claims under New Jersey law. *First*, all of the state-law claims (other than for defamation) must be dismissed because they are preempted by the Copyright Act (Counts 4, 6-9, 11). *Second*, claims premised on the

temporary removal of Stephens' YouTube account and "comparison video" are barred by Section 230 of the Communications Decency Act (Counts 4, 6-9, 11). And *third*, each of the state-law claims is independently dismissible because Plaintiffs do not adequately plead their elements (Counts 4-9, 11).

A. **Most of Plaintiffs' State-Law Claims Are Preempted by the Copyright Act (Counts 4, 6-9, 11).**

All of Plaintiffs' state-law claims (other than defamation) should be dismissed because they are preempted by the Copyright Act. State-law claims are preempted where (1) the "subject matter" of the claim falls within the subject matter of copyright; and (2) the rights asserted under state law are "equivalent to any of the exclusive rights" protected by Section 106 of the Copyright Act. *Winstead v. Jackson*, 2011 WL 4407450, at *3-4 (D.N.J. Sept. 20, 2011), *aff'd*, 509 F. App'x 139 (3d Cir. 2013); 17 U.S.C. §§ 106, 301(a). In other words, a claim is preempted if it seeks to impose liability based on the "copying, preparation of derivative works, performance, distribution or display" of a copyrighted work, unless the claim has an "extra element" that makes it "*qualitatively different* from" a copyright claim. *Daley v. Firetree, Ltd.*, 2006 WL 148879, at *2 (M.D. Pa. Jan. 19, 2006) (citation omitted). "Courts have taken a 'restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim,'" and "[n]ot every extra element is sufficient to establish a qualitative variance." *Id.* (citations omitted).

Plaintiffs' state-law claims fall squarely within the subject matter of copyright because they fundamentally seek to hold Google liable for hosting, or not removing, the "No Guidance" videos that allegedly infringe Plaintiffs' copyright. *See* Compl. ¶¶ 31, 32, 44, 75, 86-99, 115-16, 120, 133-34, 140-42, 149, 166-67, 175-76, 183-84, 188-89, 196, 201, 209. Plaintiffs' musical work and the "No Guidance" song and sound recording are core subjects of copyright law. *See* 17 U.S.C. §§ 102(a)(2), (7) ("musical works" and "sound recordings" are subject matter of copyright law).

The state-law claims also explicitly premise liability on the same conduct that underlies Plaintiffs' copyright infringement claims against Google, and thus seek to enforce rights equivalent to—or not qualitatively different from—rights protected under copyright law. *Daley*, 2006 WL 148879, at *2. Plaintiffs' copyright claims suggest that Google's alleged hosting of "No Guidance" on YouTube violated their exclusive rights, under 17 U.S.C. §§ 106(1), (3)-(6), to "reproduce[]," distribute[]," "publicly perform[]," and "display[]" Plaintiffs' work. Compl. ¶¶ 116, 130. And Plaintiffs' state-law claims are similarly "premised on the allegation that [Google] hosted the infringing work[s], the same conduct Plaintiff[s] assert[] supports [their] copyright claim." *Paypal*, 2017 WL 3508759, at *8 (finding state-law claims preempted). This is confirmed by the specific allegations underlying each claim.

The unjust enrichment claim (Count 4) vaguely alleges that "[b]ased on the facts described herein," Google was "unjustly enriched at the expense of Plaintiffs."

Compl. ¶ 149. To the extent that claim alleges anything, it appears to be that Google was "unjustly enriched" by hosting the allegedly infringing content on YouTube, and thus seeks to recover the same purported damages as Plaintiffs' copyright claims. *See id.* ¶ 121 (alleging in support of copyright claim that defendants are "not entitled to illegal revenues generated by 'No Guidance'"). It is "well-settled law" that "an unjust enrichment claim based on copyrighted subject matter is preempted by the Copyright Act." *Mills v. Alphabet Inc.*, 2018 WL 1569838, at *7 (S.D.N.Y. Mar. 28, 2018); *accord Winstead*, 2011 WL 4407450, at *4 (unjust enrichment claim preempted where it was "based on the 'profits' arising 'from the infringement of [Plaintiff's] copyright'") (citation omitted).

Plaintiffs' emotional distress (Counts 6) and breach of contract and fiduciary duty claims (Counts 7-8) are also preempted because each claim explicitly premises liability on Google's supposed violation of "a duty of care to protect [Plaintiffs'] copyrighted work," and allegedly "negligent" conduct in failing to "thoroughly conduct an investigation of copyright infringement." Compl. ¶¶ 167-68, 176-77, 182-83, 188-89. These claims plainly seek to hold Google liable for hosting (and not removing) the "No Guidance" videos and are thus copyright claims with a different label. *See Mills*, 2018 WL 1569838, at *7 (IIED and NIED claims preempted where they "arise from the same underlying conduct as [the plaintiff's] copyright infringement claim"); *Evans v. NBCUniversal Media, LLC*, 2021 WL 4513624, at

20

*6 (C.D. Cal. July 23, 2021) (similar); *Paypal*, 2017 WL 3508759, at *8 (breach of contract claim preempted where premised on "host[ing] the infringing work"); *Mortg. Market Guide, LLC v. Freedman Report, LLC*, 2008 WL 2991570, at *40 (D.N.J. July 28, 2008) (similar); *Beautiful Slides, Inc. v. Allen*, 2017 WL 3782304, at *3 (N.D. Cal. Aug. 31, 2017) (breach of fiduciary duty claim preempted).

Plaintiffs' fraud claim (Count 9)—which invokes the standard for contributory copyright infringement (*see* Compl. ¶ 196)—is also clearly preempted. *Giddings v. Vision House Prod., Inc.*, 2007 WL 2274800, at *3 (D. Ariz. Aug. 7, 2007) (fraud claim preempted because underlying allegations were "derived from Defendants' unauthorized reproduction and distribution of Plaintiff's artwork"). And finally, the conversion claim (Count 11) is preempted because it seeks to hold Google liable for "interfering with Plaintiffs' registered copyright" by not "taking down the Defenants [sic] Chris Brown infringing video," and for "convert[ing] Plaintiffs' ad revenue" and "intellectual property rights." Compl. ¶¶ 206-07. That is the same alleged conduct and damages that underlie Plaintiffs' copyright claims. *See Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 432 (W.D. Pa. 2008) ("courts within the Third Circuit have found that the Copyright Act preempts state law conversion claims regarding copyrighted property"); *Winstead*, 2011 WL 4407450, at *4 (conversion claim preempted).

**B.    Section 230 Bars The State-Law Claims Based On The Temporary Removal of Stephens' YouTube Account And "Comparison Video" (Counts 4, 6-9, 11).**

Plaintiffs' state-law claims are also barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, insofar as they are based on the temporary removal of Stephens' YouTube channel and "comparison video." This includes Plaintiffs' claims for IIED and NIED (Counts 6), fraud (Count 9), and conversion (Count 11), *see* Compl. ¶¶ 166, 168, 175, 196, 206 (alleging "illegal concealment of evidence" when Google "willfully shutdown … Stephens' YouTube account, which contained the video comparison"), and also the claims for unjust enrichment (Count 4), breach of contract (Count 7), and breach of fiduciary duty (Count 8), though the basis for the latter claims is difficult to ascertain given Plaintiffs' haphazard allegations. *See id.* ¶¶ 149, 182-85, 188-91 (vague allegations about privacy and "fraudulent, malicious and oppressive" "actions").

Section 230 mandates that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It expressly preempts any state-law claims that run afoul of this directive, no matter the label of the claim. *Id.* § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."). The statute's "immunity applies" to "bar[] lawsuits seeking to hold a service provider liable for

22

its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, ***withdraw***, postpone, or alter content," which includes "decisions relating to the … ***deletion*** of content from its network." *Obado v. Magedson*, 612 F. App'x 90, 93–94 (3d Cir. 2015) (emphasis added) (citation omitted); *see also Kabbaj v. Google, Inc.*, 2014 WL 1369864, at *3 (D. Del. Apr. 7, 2014), *aff'd*, 592 F. App'x 74 (3d Cir. 2015) ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under § 230") (quotation omitted). "Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (quotation omitted); *accord Despot v. Baltimore Life Ins. Co.*, 2016 WL 4148085, at *15 (W.D. Pa. June 28, 2016) (same; claims against Google barred by § 230).

Section 230 immunity applies where each element of its three-part test is satisfied: "(1) [] the defendant is a provider or user of an 'interactive computer service;' (2) the asserted claims treat the defendant as the publisher or speaker of [] information; and (3) the information is provided by another 'information content provider.'" *Parker*, 242 F. App'x at 838. Each element is satisfied here. As to the first, courts consistently hold that Google and YouTube are "interactive computer services." *See, e.g.*, *Weerahandi v. Shelesh*, 2017 WL 4330365, at *6 (D.N.J. Sept. 29, 2017) ("Both Google and YouTube are 'interactive computer service[s].'");

*Lancaster*, *v. Alphabet Inc.*, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (same). The second element is also satisfied because Plaintiffs seek to hold Google liable for an "action[] quintessentially related to a publisher's role" (*Obado*, 612 F. App'x at 93)—*i.e.*, the removal of Stephens' YouTube channel and "comparison video" from the platform (albeit temporarily). And the third element is satisfied because both the channel and video are "information provided by another information content provider," here, by Stephens himself.

Recognizing this, "[c]ourts have routinely rejected a wide variety of civil claims … that seek to hold interactive computer services liable for removing or blocking content or suspending or deleting accounts … on the grounds they are barred by the [Section 230 of the] CDA." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 27 (2021) (Section 230 barred breach of contract, promissory estoppel, and tort claims based on removal of plaintiff's tweets and account). Indeed, one court recently dismissed negligence and tortious interference claims against YouTube that were similarly based "on YouTube's content moderation acts (taking down content or channels or allowing content and channels)," because "YouTube's decisions to allow or disallow specific videos and to host or shut down channels" are "at the heart of, and [are] protected by, Section 230." *Hall v. YouTube, LLC*, 2025 WL 1482007, at *7 (N.D. Cal. May 5, 2025); *accord Lancaster*, 2016 WL 3648608, at *1 (Section

230 barred fraud, IIED, and negligence claims against YouTube, Google, and Alphabet "arising from Defendants' removal of Plaintiff's videos" from YouTube).[7]

So too here. Section 230 bars state-law claims based on the temporary removal of Stephens' YouTube channel and "comparison video," and all such claims should be dismissed with prejudice.

### C.    Plaintiffs' State-Law Claims Are Insufficiently Pled and Should Be Dismissed.

In addition to these cross-cutting bases for dismissal, all of the state-law claims should be dismissed for failure to state a claim under Rule 12(b)(6).

>    1.    *The Unjust Enrichment Claim Fails Because Plaintiffs Merely Recite the Elements Without Factual Support* (Count 4).

"To state a claim for unjust enrichment in New Jersey, [a plaintiff] must allege that it conferred a benefit on [the defendant] and [that the defendant's] retention of that benefit without payment would be inequitable." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 464 (D.N.J. 2020). The plaintiff "must also show that it expected remuneration from [the defendant] at the time it performed

---

[7] *See also, e.g.*, *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (emotional distress and other claims based on suspension of plaintiff's Twitter account); *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863, at *1 (N.D. Cal. Oct. 2, 2020) (claims based on Facebook's "decision to block access to [plaintiffs'] Facebook profiles"); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *2, *4-5 (N.D. Cal. May 9, 2019) (statutory and constitutional claims based on removal of posts and "on-and-off again restriction of plaintiff's use of and ability to post on the Facebook platform"); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (negligence claims based on deletion of MySpace profiles).

or conferred a benefit and that the failure of remuneration enriched [the defendant] beyond its contractual rights." *Id.* (cleaned up).

Here, Plaintiffs merely recite the elements of an unjust enrichment claim, vaguely assert that Google was unjustly enriched "[b]ased on the facts described herein," and baldly assert damages. Compl. ¶¶ 148-52. Such "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The claim should be dismissed because Plaintiffs do not even attempt to allege facts showing that they actually conferred a benefit on Google and that Google's retention of the supposed "benefit without payment would be inequitable," as required. *See Red Hawk*, 449 F. Supp. 3d at 464 (dismissing claim where complaint "does not allege facts demonstrating that [plaintiff] conferred a benefit on [defendant] with the expectation of remuneration."); *accord Katz v. Ambit Northeast, LLC*, 2020 WL 5542780, at *3 (D.N.J. Sept. 16, 2020) (similar).

       2.    *Plaintiffs' Defamation Claim Fails Because They Do Not And Cannot Allege That Google Made Publications To A Third Party Or Any Defamatory Statements, and Plaintiffs Fail to Allege Damages* (Count 5).

Plaintiffs' defamation claim should be dismissed with prejudice because they cannot state such a claim against Google. To do so, Plaintiffs "must show defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, (3) had a sufficient degree of fault; and

(4) damages." *Bello v. United Pan Am Fin. Corp*, 2021 WL 2549243, at *3 (D.N.J. June 22, 2021) (citation omitted). Plaintiffs' claim fails because (i) Google did not publish any of the at-issue statements to a third party, (ii) none of the statements is defamatory, and (iii) Plaintiffs do not plausibly allege damages. Any claim by Dore also fails because Google did not make any statements about her.

*First*, to qualify as defamation, a statement must be published to a third party. *Id.* However, Google did not publish any of the at-issue statements to third parties; they were made solely to *Stephens* via emails Google sent only to *Stephens'* email address in response to his DMCA requests. *See* Compl., Exs. 12, 14, 18. Notably, it was *Stephens*, not Google, who published the statements to third parties when he forwarded the communications to several of the non-Google defendants and their attorneys. Compl. ¶ 94 ("*Marc Stephens sent an email* to the Defendants . . . ." (emphasis added)); *id.* at Ex. 19 (forwarded email from Stephens to various defendants). Thus, Plaintiffs do not and cannot satisfy the publication requirement, requiring dismissal with prejudice. *See 30 River Ct. E. Urb. Renewal Co. v. Capograsso*, 383 N.J. Super. 470, 477 (App. Div. 2006) ("Since the law of defamation seeks to secure reputation, *there must be a communication to a third person*." (emphasis added) (citation omitted)); *Mehta v. Fairleigh Dickinson Univ.*, 2012 WL 458421, at *10 (D.N.J. Feb. 9, 2012) (dismissing claim where allegedly

defamatory statement was made in email addressed only to plaintiff), *aff'd in part, vacated in part, remanded on other grounds by*, 530 F. App'x 191 (3d Cir. 2013).

*Second*, the Complaint does not identify any defamatory statements by Google. A defamatory statement is "one that is false and injurious to the reputation of another or exposes another person to hatred, contempt or ridicule or subjects another person to a loss of the good will and confidence [of] … others." *Soobzokov v. Lichtblau*, 2016 WL 614411, at *2 (D.N.J. Feb. 16, 2016). "[O]nly verifiable statements can be defamatory," and "[s]ince opinions and name-calling cannot be proved true or false, they are not actionable." *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 331 N.J. Super. 303, 312 (App. Div. 2000). Courts may, as a matter of law, determine whether a statement is defamatory, including on a motion to dismiss. *Soobzokov*, 2016 WL 614411, at *2 (dismissing pro se plaintiff's defamation claim).

Plaintiffs' defamation claim is solely based on DMCA-related emails Google sent to Stephens in which YouTube stated, (1) "***We are concerned*** that some of the info in your takedown request ***may be*** fraudulent," (2) "***We are concerned*** that some of the info within this legal request ***may be*** fraudulent," and (3) "Hello, Your account has been suspended for submitting abusive legal requests and will not be reinstated." *See* Compl. ¶¶ 87, 89, 93; Exs. 12, 14, 18 (emphases added). The first two of these statements are mere opinions and "not actionable." *See McLaughlin*, 331 N.J. Super. at 312. Those two statements are qualified by the phrase "we are concerned" and,

more importantly, the insertion of the word "may" before "be fraudulent," demonstrating that Google was expressing its opinion that the takedown requests *might* have been fraudulent. The third statement was merely a notification that YouTube suspended Stephens' account, which is factual and truthful, along with YouTube's explanation for why it did so (*i.e.*, its opinion at the time of the termination that Stephens' takedown requests were "abusive").[8]

*Third*, Plaintiffs do not plausibly allege that they have suffered any damages. Although Plaintiffs' claim is pled as defamation *per se*, the claim is in fact ordinary defamation.[9] Thus, to survive dismissal, Plaintiffs must plausibly allege that Google's statements resulted in damages. *Bello*, 2021 WL 2549243, at *3 (dismissing defamation claim because "there is no allegation of harm, pecuniary or reputational, stemming from the alleged defamatory statement"). Plaintiffs fail to allege any facts that would support a damages award. The closest they get is alleging

---

[8] Additionally, even if the statements were published to a third party by Google (they were not), given the hedging language the opinions contain, none of the statements can plausibly be said to have exposed Plaintiffs to "hatred, contempt or ridicule" or subjected them "to a loss of the good will and confidence [of] … others," prerequisites for stating a claim of defamation. *See Soobzokov*, 2016 WL 614411, at *2. Nor do Plaintiffs allege as much. This alone requires dismissal.

[9] Four types of statements qualify as defamation *per se*: "accusing another (1) of having committed a criminal offense, (2) of having a loathsome disease, (3) of engaging in conduct or having a condition or trait incompatible with his or her business, or (4) of having engaged in serious sexual misconduct." *McLaughlin*, 331 N.J. Super. at 314. Because none of the at-issue statements falls into these four categories, Plaintiffs must plausibly allege damages to survive a motion to dismiss. *See Ward v. Zelikovsky*, 136 N.J. 516, 540 (1994).

in conclusory fashion that Google's statements have caused reputational harm (an allegation they rotely repeat in their other claims). *See* Compl. ¶¶ 159, 163. But Plaintiffs do not allege *how* Google's statements caused them reputational harm or allege any facts concerning the alleged harm. Plaintiffs' conclusory allegations of harm are insufficient. *HV Assocs. LLC v. PNC Bank, N.A.*, 2018 WL 1243984, at *7 (D.N.J. Mar. 8, 2018) (dismissing defamation claim for conclusory allegations), *on reconsideration*, 2018 WL 2090690 (D.N.J. May 4, 2018). Thus, Plaintiffs' defamation claim should be dismissed with prejudice.

### 3. *Plaintiffs Cannot Maintain Claims for Intentional and Negligent Infliction of Emotional Distress* (Count 6).

Although difficult to follow, Plaintiffs' distress claims appear to be based on (i) copyright infringement allegations, (ii) Google's temporary suspension of Stephens' YouTube channel and video, and (iii) Google's allegedly defamatory statements. Compl. ¶¶ 164-80. As discussed, such claims are preempted by the Copyright Act and barred by Section 230, *supra* § II.B., and also fail along with Plaintiffs' defective defamation claim. *See DeGroat v. Cooper*, 2014 WL 1922831, at *5-6 (D.N.J. May 14, 2014) (dismissing distress claims "based on the same conduct as Plaintiffs' defamation claim") (quotation omitted); *accord Salek v. Passaic Collegiate Sch.*, 255 N.J. Super. 355, 360 (App. Div. 1992) (same).

Plaintiffs also again fail to sufficiently plead their claims. To plead IIED, Plaintiffs must show that Google (1) "intended to cause emotional distress," (2) its

"conduct was extreme and outrageous," (3) its "actions proximately caused emotional distress," and (4) the "emotional distress was severe." *Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001). To satisfy the second prong, "[t]he conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *D'Angelo v. Ocwen Loan Servicing, LLC*, 2017 WL 712781, at *7 (N.J. Super. Ct. App. Div. Feb. 23, 2017) (citation omitted). Plaintiffs' failure to plead such conduct requires dismissal. *Id.* at *7-8.

As to the fourth element, the emotional distress "must be 'so severe that no reasonable [person] could be expected to endure it.'" *Id.* at *7 (quotation omitted). "Complaints such as lack of sleep, aggravation, headaches and depression have been frequently deemed insufficient as a matter of law." *Id.* (quotation omitted). The "same level" of distress required for IIED is also "required to sustain a claim for negligent infliction of emotional distress." *Id.* at *9 (quotation omitted).

Plaintiffs do not plead severe harm, but rather generic ailments—"emotional distress, humiliation, embarrassment, discomfort, anxiety, inconvenience, [and] mental and emotional anguish" (Compl. ¶¶ 170, 179)—that courts deem insufficient as a matter of law. *See D'Angelo*, 2017 WL 712781, at *8-9; *Phillips v. New Jersey Transit*, 2021 WL 1661087, at *12 (D.N.J. Apr. 28, 2021) (dismissing claims where

31

plaintiff alleged only "'emotional distress and anxiety'" but had "not alleged that she sought any medical treatment"). The distress claims should be dismissed.

> 4. *Plaintiffs Cannot State a Breach of Contract Claim* (Count 7).

Plaintiffs' breach of contract claim appears to allege that Stephens agreed to YouTube's TOS and that YouTube breached its obligations thereunder. Compl. ¶¶ 181-86. In supposed support, Stephens block-quotes the following TOS provision:

> If you have a YouTube channel, you may be able to upload Content to the Service. You may use your Content to promote your business or artistic enterprise. If you choose to upload content, you **must not** submit to the Service any Content that does not comply with this Agreement (including the YouTube Community Guidelines) or the law. For example, the Content you submit **must not** include third-party intellectual property (such as copyrighted material) **unless** you have permission from that party or are otherwise legally entitled to do so. You are legally responsible for the Content you submit to the Service. We may **use automated systems** that analyze your Content to help detect infringement and abuse, such as spam, malware, and illegal content.

*Id.* ¶ 184 (emphases in original). But Stephens does not allege which portion of this provision Google supposedly breached, or how. Nor could he. This language is found under the section titled, "Your Content and Conduct," *see* TOS at 1, and outlines obligations of YouTube *users* to YouTube. As the provision states, *the user* is "legally responsible for the Content [they] submit to the Service," and the *user* "must not include third-party intellectual property (such as copyrighted material)" in their "Content" without permission or legal entitlement. *Id.*

Insofar as the breach claim suggests that Google violated the provision because Chris Brown uploaded the "No Guidance" videos to the service, such a claim cannot stand. Nowhere in that provision—or anywhere in the TOS—does Google represent or promise to users that third parties will not upload content to YouTube that the user believes may infringe their copyrighted material. The contract claim must be dismissed because Stephens cannot allege that the cited provision imposed any obligation *on Google* (as opposed to users) or that Google breached it. *See Daniels v. Alphabet Inc., et al.*, 2021 WL 1222166, at *8 (N.D. Cal. Mar. 31, 2021) (dismissing breach claim based on YouTube TOS where the TOS did not impose the obligations the plaintiffs alleged).

Further, to the extent that the breach claim is based on Google's decision not to remove the "No Guidance" videos in response to Stephens' DMCA takedown requests, such a claim also fails because Stephens cannot "identify any specific provision of the TOS that imposes a duty on YouTube to act on user reports" of alleged infringement. *See Hall*, 2025 WL 1482007, at *4 (dismissing breach of contract claim against YouTube alleging, *inter alia*, that it "failed to take down infringing content" in response to the plaintiff's DMCA takedown notices, since the

YouTube TOS impose no such obligation). Any such claim is also preempted by the

Copyright Act, as discussed *supra* § II.A.[10]

        5.     *Google Owes No Fiduciary Duty to Plaintiffs* (Count 8).

To state a claim for breach of fiduciary duty, "a plaintiff must allege 1) the

existence of a fiduciary duty or relationship between the parties; 2) breach of that

duty; and 3) resulting damages." *In re U.S. Vision Data Breach Litig.*, 732 F. Supp.

3d 369, 376 (D.N.J. 2024) (cleaned up). "A fiduciary relationship arises ... when one

... is under a duty to act for or give advice for the benefit of another on matters within

the scope of their relationship." *Id.* (cleaned up).

Plaintiffs allege that Google "ha[s] a duty to protect Plaintiffs' copyrighted

work, and a duty of care to protect Plaintiff's right to privacy" (even though they

assert no privacy claim or any basis for one). *See* Compl. ¶ 189. Plaintiffs are wrong

that Google owes them such "duties." *See, e.g.*, *Hall*, 2025 WL 1482007, at \*6

("Online platforms do not owe their users a general duty of care to manage or

investigate DMCA takedown notices or counter-notices") (citation omitted); *Dyroff*

---

[10] Additionally, Plaintiffs cannot assert a breach claim (or any other) based on YouTube's suspension of Stephens' channel and video, because Section 230 forecloses that claim (*supra* § II.B.), as does the TOS, "which expressly reserves broad discretion to YouTube to remove or retain content and disclaims any obligation to host content," and "explicitly allows YouTube to remove content and terminate accounts without cause," *Hall*, 2025 WL 1482007, at \*6-7 (dismissing breach claim based on removal of YouTube channels and content); *see also* TOS at 4, 10 ("YouTube is under no obligation to host or serve Content," and "reserve[s] the right to remove or take down some or all of such Content in our discretion").

*v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."). Even more problematically, Plaintiffs do not plausibly allege that Google owes them any *fiduciary duties*. Nor could they. Google is not aware of any legal authority that would support the existence of fiduciary duties owed by an online service to its billions of users. *See In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d at 376 (dismissing claim where plaintiff failed to adequately plead fiduciary duty).

6.    <em>Plaintiffs' Fraud Claim Is Deficient</em> (Count 9).

Plaintiffs' fraud claim merely (i) recites the elements of common-law fraud and fraud under the New Jersey Consumer Fraud Act, (ii) vaguely alleges that Google failed to "comply with" its TOS, and (iii) alleges that Google had knowledge of "specific acts of infringement," accused Stephens of fraud, and terminated his account. Compl. ¶¶ 193-98. This falls well short of stating a claim.

Merely reciting a claim's elements is insufficient. *Katz*, 2020 WL 5542780, at *3. And Plaintiffs' few factual allegations do not bear on the elements of fraud claims under common law or the New Jersey Consumer Fraud Act. To state a common-law fraud claim, "a plaintiff must allege 'that the defendant materially misrepresented a presently existing or past fact; the defendant knew or believed it was false, intending that the plaintiff would rely on the misrepresentation, and the

35

plaintiff reasonably relied on the misrepresentation and suffered damage as a result.'" *Id.* at *4 (citation omitted). Here, Plaintiffs allege no misrepresentation by Google, much less any reliance thereon. *See* Compl. ¶¶ 193-98.

To state a claim under the Consumer Fraud Act, Plaintiffs must allege "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div. 2003). Plaintiffs here fail to identify within their fraud claim the supposed unlawful conduct underpinning the claim. *See* Compl. ¶¶ 193-98. Additionally, the TOS contains a limitation of liability provision absolving YouTube from any responsibility for "any loss of profits, revenues, business opportunities, goodwill, . . . .; indirect or consequential loss; [or] punitive damages caused by: (1) errors, mistakes, or inaccuracies on the Service; . . . (4) any interruption or cessation of the Service; . . . . and/or (7) the removal or unavailability of any Content." TOS at 13. "This provision applies to any claim, regardless of whether the claim asserted is based on warranty, contract, tort, or any other legal theory." *Id.* Thus this provision defeats the fraud claim, which should be dismissed.[11]

---

[11] To the extent Plaintiffs' fraud claim is based on the TOS, which it appears to be, Compl. ¶ 197, the economic loss doctrine also bars it. *Nieves v. Lyft, Inc.*, 2018 WL 2441769, at *19 (D.N.J. May 31, 2018) (dismissing claim for "lack[] [of] any allegations that could be liberally construed as sufficiently alleging a fraud separate and distinct from Defendant's performance obligations under the TOS").

Finally, Plaintiffs' fraud claim should be dismissed for failing to plead it with particularity as required by Fed. R. Civ. P. 9(b). *See Inventory Recovery Corp. v. Gabriel*, 2012 WL 2990693, at *6 (D.N.J. July 20, 2012) (dismissing claim).

### 7. *Plaintiffs' Conversion Claim is Deficiently Pled* (Count 11).

"To state a claim for conversion, a plaintiff must show: (1) wrongful exercise of dominion or control over the property of another; (2) the taking of the property without authorization; and (3) that the taking was to the exclusion of the owner's rights to that property." *W.H.P.M., Inc. v. Immunostics, Inc.*, 2020 WL 359146, at *5 (D.N.J. Jan. 22, 2020) (citation omitted).

Conversion provides a remedy to those whose personal property is taken from them. Plaintiffs' claim appears to be based on Google's alleged "destroying of all evidence related to Defendant Chris Brown's copyright infringement" when it temporarily removed Stephens' "comparison video" from YouTube. Compl. ¶ 206. But Plaintiffs cannot plausibly allege that YouTube converted or took any "property" merely because it briefly disallowed a *copy* of Stephens' *video* to exist on YouTube. Plaintiffs do not allege that YouTube's temporary removal dispossessed Stephens of the underlying video itself (or that such a video is personal property). And Plaintiffs have no cognizable property interest in a website *copy* of content Stephens posted to YouTube. *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 969-70 (9th Cir. 2024) (affirming dismissal of property claim because

"a cognizable property right does not exist in a website copy"). There has thus been no taking or conversion of any supposed property.

Moreover, the YouTube TOS that Stephens agreed to when creating his account expressly states that "YouTube is under no obligation to host or serve Content," and "reserve[s] the right to remove or take down some or all of such Content in our discretion." TOS at 4, 10. Stephens' agreement to these terms defeats any claim that YouTube's removal of his content constituted an improper "taking" without authorization. *See Mercola.com, LLC v. Google LLC*, 2023 WL 5680112, at *7 (N.D. Cal. Sept. 4, 2023), *aff'd*, 2024 WL 2745208 (9th Cir. May 29, 2024) (dismissing conversion claim grounded in allegations that YouTube converted the plaintiffs' property by removing content on their YouTube channel).

Insofar as the losses Plaintiffs seek to recover are supposed losses stemming from the temporary removal of the comparison video, as explained above, *supra* § II.C.4., the TOS's limitation of liability absolves YouTube from any liability related to "the removal or unavailability of any content." TOS at 13.

The state-law claims should thus all be dismissed for failure to state a claim.

## III.    THE COMPLAINT VIOLATES RULE 8

The entire Complaint can also be dismissed for failing to contain "a short and plain statement" of Plaintiffs' claims stated through "simple, concise, and direct" allegations. Fed. R. Civ. P. 8(a)(2), (d)(1). As described, the Complaint flouts Rule

8 by relying on improper group pleading and irrelevant and often indecipherable allegations disconnected from the elements of Plaintiffs' claims. *Karupaiyan v. Atlantic Realty Dev. Co., Inc.*, 2020 WL 13728036, at *2 (D.N.J. Jan. 17, 2020), *aff'd*, 827 F. App'x 165 (3d Cir. 2020) (dismissing pro se complaint because "vague group pleading 'undermines the notice pleading regime of Rule 8'") (citation omitted); *Cambridge Mutual Fire Ins Co. v. Stihl Inc.*, 2023 WL 5928319, at *2 (D.N.J. Sept. 12, 2023) (dismissing shotgun complaint under Rule 8). These pleading requirements apply equally to pro se plaintiffs. *See Prelle v. United States*, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (pro se complaints "must still comply with the pleading requirements of Rule 8.") (citation omitted). Plaintiffs' failure to comply with Rule 8 thus warrants complete dismissal of the Complaint.

## IV.    ALL CLAIMS AGAINST ALPHABET MUST BE DISMISSED

Finally, Plaintiffs' claims against Alphabet fail because Alphabet is not a proper defendant. Each claim relates to the operation of YouTube, which is provided by Alphabet's subsidiary, Google LLC. Auster Decl., Ex. A. But it is a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of its subsidiaries." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (citation omitted).

Plaintiffs attempt to evade this black-letter rule of law by vaguely suggesting they can pierce the corporate veil and hold Alphabet liable through an alter ego

theory. Compl. ¶¶ 82-86. But that "limited exception" arises "only in extraordinary circumstances," such as when the "corporate form" is "misused" to "protect fraud or defend crime," and requires a showing that "is notoriously difficult for plaintiffs to meet." *Trinity Indus.*, 903 F.3d at 365 (cleaned up). Setting aside the conclusory assertion that Alphabet "dominate[s] and control[s]" Google and YouTube for its "own purposes" (Compl. ¶ 85), Plaintiffs do not (and cannot) allege anything indicative of an alter ego relationship. *See Trinity Indus.*, 903 F.3d at 365 (discussing factors). If the mere allegation that each entity "generate[s] advertising revenue" were enough (Compl. ¶ 86), then every company that generates revenue through its subsidiaries could be liable for their conduct. That is simply not the law.

Courts routinely dismiss claims against Alphabet where, as here, they are premised on the conduct of its subsidiaries. *See Lancaster*, 2016 WL 3648608, at *1, *7 (dismissing copyright infringement, IIED, fraud, and other claims where "Plaintiff d[id] not make any specific allegations against Alphabet"); *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at *2 (D.S.C. Mar. 31, 2019) (similar); *Kremer v. Alphabet Inc.*, 2024 WL 923900, at *5 (M.D. Tenn. Mar. 4, 2024) (similar). Alphabet should thus be dismissed with prejudice here as well.

## V.    CONCLUSION

For all the reasons detailed herein, the Court should dismiss with prejudice all of Plaintiffs' claims against YouTube, LLC, Google LLC, and Alphabet Inc.

Dated: June 2, 2025
      Newark, New Jersey

*/s Alison L. Genova*
Alison L. Genova
Jeremy P. Auster (*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th
Floor
New York, New York 10019
Tel: (212) 497-7796
Fax: (212) 999-5801

*Counsel for Defendants Alphabet Inc.,
Google LLC, and YouTube, LLC*