UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

February 25, 2026

VIA ECF
All Counsel of Record

VIA CERTIFIED & ELECTRONIC MAIL

## LETTER ORDER

Re:   Dore v. Chris Brown Entertainment, et al.
         Civil Action No. 24-10103

Dear Litigants:

Before the Court is Defendants Google, LLC ("Google"), YouTube, LLC ("YouTube"), and Alphabet, Inc.'s ("Alphabet") (collectively, "Defendants") Motion to Dismiss ("Motion") pro se Plaintiffs Tykeiya Dore's ("Dore") and Marc A. Stephens' ("Stephens") ("collectively, Plaintiffs") Complaint. See ECF Nos. 1, 61. Plaintiffs oppose Defendants' Motion. See ECF No. 62. For the reasons discussed below, Defendants' Motion is **GRANTED**.

I.   BACKGROUND

A.   Factual Background

Google is a leading provider of internet services, including the YouTube platform, which allows users to "to discover, watch[,] and share videos and other content." ECF No. 61.2, Terms of Serv., at 3. Alphabet is the parent company of Google and YouTube. See ECF 1, Compl., at ¶ 82. Dore describes herself as a "singer, songwriter, and producer." See id. ¶ 6.

Plaintiffs[1] allege that Dore wrote the song "I Got It" in 2015, uploaded it to YouTube in March 2017, and registered it as a "musical work" with the U.S. Copyright Office in July 2019. See id. ¶¶ 29–33. According to Plaintiffs, between August 2018 and May 2019, certain dismissed defendants[2] created the song "No Guidance" and uploaded it to YouTube in approximately June

---

[1]   While the Complaint is notably devoid of factual allegations or descriptions regarding Stephens' specific injury or involvement, for purposes of this Letter Order, the Court assumes without deciding that Stephens has standing to bring suit. See Rumsfeld v. Forum for Acad. & Inst. Rights, Inc., 547 U.S. 47, 52–53, n.2 (2006) (affirming that the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement); Pennsylvania v. President United States, 888 F.3d 52, 57 n.2 (3d Cir. 2018) (finding similarly).

[2]   On October 30, 2025, this Court granted Co-Defendants Songs of Universal, Inc. ("SOU"), Sony Music Publishing

2019.  See id. ¶¶ 34–38, 41, 46.  The issue here is the claimed commonalities between "I Got It" and "No Guidance."

Due to the alleged similarities, in May 2024, Stephens emailed YouTube a takedown notice pursuant to the Digital Millennium Copyright Act ("DMCA"), alleging "No Guidance" infringed "I Got It" and requesting YouTube remove "No Guidance" from its platform.  See ECF 1.3, Ex. 8.  The notice included a link to a comparison video on Stephens' YouTube channel purporting to illustrate the substantial similarities between "I Got It" and "No Guidance."  See ECF 1, Compl., ¶¶ 40, 71; Exs. 2, 8.  CBE's counsel submitted a DMCA counter notification to YouTube explaining why "No Guidance" was non-infringing, and requested that "No Guidance" remain on YouTube.  See id. ¶¶ 92, Ex. 17.  Stephens subsequently exchanged various emails with YouTube, among others, regarding Stephens' takedown requests.  See id. ¶¶ 87–91, 93, 97, 98; Exs. 12–16, 18, 22–23.

YouTube ultimately expressed concern that some information in Stephens' DMCA takedown notice "may be fraudulent."  See id. ¶ 87.  As a result, YouTube terminated Stephens' YouTube account.  See id. ¶ 89, Ex. 12.  Stephens internally appealed YouTube's termination decision and, approximately one month later, YouTube "concluded that [Stephens'] channel [was] terminated incorrectly and . . . reinstated [Stephens'] channel."  See id. ¶¶ 88–91, 98, Ex. 23.  To date, "I Got It," "No Guidance," and Stephens' comparison video are live on YouTube.  See id. ¶¶ 40, 71, Ex. 2.

### B. Procedural History

On October 25, 2024, Plaintiffs filed a Complaint against Defendants in federal court asserting twelve causes of action: copyright infringement (Counts 1–3, 10), unjust enrichment (Count 4), defamation per se (Count 5), intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") (Count 6),[3] breach of contract (Count 7), breach of fiduciary duty (Count 8), common-law fraud (Count 9), and conversion (Count 11).

With respect to the federal copyright infringement claims, Plaintiffs principally assert that "No Guidance" (and its accompanying sound recording) infringes "I Got It" because the chorus in "No Guidance" repeats the lyric "you got it" and the chorus in "I Got It" repeats the lyric "I got it," and each song allegedly uses "the same chord progressions, tempo, pitch, key, melody, harmony, rhythm, structure . . . [and] phrasing."  See id. ¶¶ 38–39, 64.

The premise of virtually all of the state-law claims is that Google, in operating and overseeing the YouTube platform, violated New Jersey law because it hosted—rather than created—the purportedly infringing "No Guidance" video on YouTube, and/or because it terminated Stephens' YouTube account for approximately one month.  See generally Compl.

On March 28, 2025, SOU, SMP, SME, and CBE moved to dismiss Plaintiffs' copyright infringement claims, contending Plaintiffs cannot allege substantial similarity between any

---

(US) LLC ("SMP"), Sony Music Entertainment ("SME") and Chris Brown Entertainment, LLC's ("CBE") Motion to Dismiss on jurisdictional grounds.  See ECF No. 64.

[3]  The Complaint labels Plaintiffs' IIED and NIED claims collectively under Count 6.

protectable elements of "I Got It" and "No Guidance," and because the Complaint fails to allege that the "No Guidance" creators had access to Plaintiffs' work. See ECF No. 43. This Court granted that motion to dismiss solely on jurisdictional grounds and, accordingly, did not reach the briefed Rule 12(b)(6) arguments. See ECF No. 64.

On June 2, 2025, Defendants moved to dismiss Plaintiffs' Complaint under Rules 12(b)(6) and 8. See ECF No. 61. Defendants adopt and incorporate by reference the Rule 12(b)(6) arguments set forth in SOU, SMP, SME, and CBE's motion to dismiss, specifically with regard to Plaintiffs' substantial similarity and access allegations. See ECF No. 61, n.6. Plaintiffs oppose Defendants' Motion. See ECF No. 62.

## II. LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Courts generally may not consider material extraneous to the pleadings in resolving a motion to dismiss except those "documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks and citation omitted).

Since Plaintiffs are proceeding pro se, the Court must construe their pleadings liberally and hold them to a less stringent standard than those filed by attorneys, Haines v. Kerner, 404 U.S. 519, 520 (1972), but the "Court need not . . . credit a pro se plaintiff's bald assertions or legal conclusions," Mestman v. Escandon, No. 14-3880, 2014 WL 11398143, at *1 (D.N.J. June 26, 2014) (internal quotation marks and citations omitted). "[T]here are limits to [the Court's] procedural flexibility," and "[pro se] litigants must still allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

## III. ANALYSIS

### A. Federal Copyright Infringement Claims (Counts 1–3, 10)

#### i. Common Law Copyright Infringement (Count 1)

Plaintiffs contend their common law copyright infringement claim remains viable because the Copyright Act of 1976 ("Copyright Act") does not preempt state-level protections in this specific instance. Defendant responds that this claim is preempted by the Copyright Act.

Congress revised the statutory law of copyright on October 19, 1976 in Public Law 94-553, 17 U.S.C. § 101 et seq., (1976). The Copyright Act now provides:

§ 301. Preemption with respect to other laws

> (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. <u>Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State</u>.
>
> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
>
>> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or
>>
>> (2) any cause of action arising from undertakings commenced before January 1, 1978;
>>
>> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . .

See 17 U.S.C. § 301(a)–(b) (emphasis added). The stated intention of this section "is to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright and that extend to works within the scope of the [f]ederal copyright law." Rowe v. Golden W. TV Prods., 445 A.2d 1165, 1169 (N.J. Super. Ct. App. Div. 1982) (internal quotation marks and citations omitted). A state-law action will therefore be preempted by the Copyright Act if: (1) the nature of the work of authorship in which rights are claimed come within the subject matter of copyright as defined in §§ 102 and 103; and (2) the rights granted under state-law are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106. See id.; see also Dun & Bradstreet Software Servs. v. Grace Consulting, Inc., 307 F.3d 197, 216–17 (3d Cir. 2002) (stating similarly).

Here, the alleged infringing activity occurred after 1978 and thus was not "commenced before January 1, 1978." The "work of authorship in which rights are claimed" in this case are the "I Got It" and "No Guidance" musical works, the creation of which occurred after 2015. As such, the work of authorship clearly "comes within the subject matter" of 17 U.S.C. § 102.

Furthermore, the "rights granted" under our law (in this case the right to reproduce, copy, and/or prepare derivative works) is equivalent to the exclusive rights specified in 17 U.S.C. § 106.

Accordingly, Plaintiffs' common law copyright infringement claim is statutorily preempted by § 301 of the Copyright Act.

### ii.    Direct Copyright Infringement (Count 2)

Plaintiffs contend the Complaint sets forth a plausible claim for direct copyright infringement. Defendants respond that this claim fails as a matter of law because Plaintiffs fail to allege "volitional conduct" on behalf of Defendants.

To state a claim for copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) unauthorized copying of original elements of a plaintiff's work. See Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005) (citing Bradstreet, 307 F.3d at 206). "Unauthorized copying" refers generally to five prohibited acts that constitute direct infringement under the Copyright Act, namely unauthorized reproduction, distribution, public display, performance, or creation of derivative works of the copyrighted work. See 17 U.S.C. § 106.

To allege direct copyright infringement, "a plaintiff must allege volitional conduct on the part of the defendant." Parker v. Google, Inc., 242 F. App'x 833, 836 (3d Cir. 2007) (citations omitted). The volitional conduct inquiry seeks to determine whether the defendant caused the copyrighted material to be infringed. See Perfect 10, Inc. v. Giganews, Inc., No. 11-7098, 2013 WL 2109963, at *6 (C.D. Cal. Mar. 8, 2013) ("[T]he key to understanding the so-called 'volitional conduct' requirement is to equate it with the requirement of causation, not intent").

Here, Plaintiffs have failed to allege that Defendants committed or caused a volitional act of direct copyright infringement. As a provider of an automated service (YouTube) that hosts content uploaded by third-party users, Google cannot be liable for direct infringement because "passively storing material at the direction of users in order to make that material available to other users upon request," or "automatically copying, storing, and transmitting materials upon instigation by others," is not "volitional conduct." Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 668, 671 (9th Cir. 2017) (citations omitted).

The law on this point is settled. Courts have routinely held that passively hosting infringing works on a server or cache does not rise to the level of volitional conduct required for direct copyright infringement liability. See, e.g., Parker, 242 F. App'x at 836–37 (finding no volitional conduct when the defendant cached websites that held infringing works); CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 551 (4th Cir. 2004) ("There are thousands of owners, contractors, servers, and users involved in the [i]nternet whose role involves the storage and transmission of data in the establishment and maintenance of an [i]nternet facility. Yet their conduct is not truly 'copying' as understood by the [Copyright] Act; rather, they are conduits from or to would-be copiers and have no interest in the copy itself"); Parker v. Paypal, Inc., No. 16-4786, 2017 WL 3508759, at *4 (E.D. Pa. Aug. 16, 2017) (finding no direct infringement when the defendants stored infringing work on their cloud server).

Plaintiffs' direct copyright infringement claim is therefore dismissed.

### iii.     Vicarious Copyright Infringement (Count 3)

Plaintiffs assert Defendants' failure to act upon the issuance of Stephens' DMCA takedown notices constitutes a failure to exercise their right and ability to stop or limit the alleged infringement, establishing the necessary control for a finding of vicarious copyright infringement. Defendants respond this claim fails as a matter of law because Plaintiffs have failed to sufficiently allege not only the right and ability to supervise the infringing activity but also a direct financial interest in said activity.

To prevail on a claim for vicarious copyright infringement, a plaintiff must prove the defendant "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Parker, 242 F. App'x at 837 (citation omitted). "Financial benefit exists where the availability of infringing material acts as a draw for customers." Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004) (internal quotation marks and citation omitted). "There is no requirement that the draw be 'substantial.'" Id. at 1079.

Here, Plaintiffs failed to allege that Google had the right and ability to supervise and/or control the purported infringing activity, a critical deficiency that invalidates the entire claim. See Parker v. Google, Inc., 422 F. Supp. 2d 492, 500 (E.D. Pa. Mar. 10, 2006) (dismissing vicarious copyright infringement claim because the complaint failed to "allege specific conduct by a third party which Google may have had the right and ability to supervise").

Plaintiffs also failed to allege that Google had a direct financial interest in the purported infringing activity. The Complaint does not allege any actual relationship between an infringing activity and the number of users and thus does not allege obvious and direct financial interest sufficient to maintain this claim of vicarious infringement. See Ellison, 357 F.3d at 1079 (vicarious copyright infringement claim fails where "record lacks evidence that [the defendant] attracted or retained subscriptions because of the infringement or lost subscriptions because of [the defendant's] eventual obstruction of the infringement"); see also Parker, 422 F. Supp. 2d at 500 (finding same).

Notwithstanding these deficiencies, because the Court holds that Defendants did not adequately allege infringement of Plaintiffs' copyright, Plaintiffs' claim of vicarious infringement ultimately fails since it hinges on a preliminary finding of direct infringement. See MGM Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) ("[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement, . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it") (citations omitted).

Accordingly, Plaintiffs' claim for vicarious copyright infringement is dismissed.

### iv.     Contributory Copyright Infringement (Count 10)

Plaintiffs next claim Google is liable under a theory of contributory copyright infringement because it had "actual knowledge of specific acts of infringement" and engaged in "willful

blindness of specific facts" and "illegal concealment of evidence" by deleting Plaintiffs' comparison video and terminating Stephens' YouTube account. Defendants respond that Plaintiffs fail to state a claim because they cannot allege that Google provides the YouTube service "with the object of promoting its use to infringe copyright."

"'One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another may be liable as a contributory [copyright] infringer.'" Ellison, 357 F.3d at 1076 (citation omitted). To state a claim for contributory copyright infringement, a plaintiff must allege: (1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement. See Parker, 242 F. App'x at 837 (citing Columbia Pictures Indus., Inc. v. Redd Horne, Inc., 749 F.2d 154, 160 (3d Cir. 1984)). That "authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer." Id. (citation omitted).

Here, Plaintiffs fail to allege third-party infringement and contribution by Defendants. More fundamentally, Plaintiffs fail to allege that Defendants had requisite knowledge of a third party's infringing activity, a central flaw that renders this claim meritless. Cf. Ellison, 357 F.3d at 1077 (finding that the plaintiff emailed [the defendant] about his copyright infringement claim and that [the defendant], despite its changed e-mail address, should have been on notice of the infringing activity). And Plaintiffs fail to demonstrate that Google leveraged YouTube's platform "with the object of promoting its use to infringe copyright." See Grokster, 545 U.S. at 919 (holding "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties").

Despite these shortcomings, because the Court holds that Defendants did not infringe on Plaintiffs' copyright, Plaintiffs' claim of contributory infringement ultimately fails since it hinges on a preliminary finding of direct infringement. See Arista Rec.'s Inc. v. Flea World, Inc., No. 03-2670, 2006 WL 842883, at *8 (D.N.J. Mar. 31, 2006) ("Any finding of . . . contributory infringement . . . liability by this Court hinges on the Court first concluding that vendors in the [m]arket have directly infringed [the] [p]laintiffs' copyrighted recordings") (citations omitted).

As a result, Plaintiffs' contributory copyright infringement is dismissed.

**B.     Preempted State-Law Claims (Counts 4, 6–9, 11)**

Plaintiffs allege that their state-law claims are not preempted by the Copyright Act because each claim incorporates "elements beyond those necessary" to prove copyright infringement and involves conduct "qualitatively different from" that governed by copyright law. Defendants respond that Plaintiffs' state-law claims are preempted the Copyright Act because the claims fall squarely within the "subject matter" of copyright and explicitly premise liability on the same conduct that underlies Plaintiffs' copyright infringement claims.

As discussed above, § 301 of the Copyright Act explicitly preempts state laws that (1) fall within the subject matter of the federal copyright law and protect works that are fixed in tangible

medium of expression; and (2) create legal or equitable that are equivalent to any of the exclusive rights granted to the copyright holder and specified in § 106.  See Jarvis v. A & M Records, 827 F. Supp. 282, 296–97 (D.N.J. 1993) (citations omitted); see also 17 U.S.C. § 301.

To determine whether a claim is qualitatively different, courts look at "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected[,] and the rights sought to be enforced."  Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004) (quotations and citations omitted); see also Jarvis, 827 F. Supp. at 297.  "Not every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law."  Bradstreet, 307 F.3d at 218 (citation omitted); see also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F. Supp. 2d 552, 564 (D.N.J. 2002).  Indeed, courts have taken a "restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim."  Briarpatch, 373 F.3d at 306 (citation omitted).

Here, all of Plaintiffs' state-law claims (with the exception of Count 5, i.e., defamation) fall within the subject matter of copyright law because they primarily seek to hold Google liable for passively hosting, or not removing, "No Guidance" from YouTube.  See e.g., ECF 1, Compl., ¶¶ 31–32, 44, 75, 86–99, 115–16, 120, 133–34, 140–42, 149, 166–67, 175–76, 183–84, 188–89, 196, 201, 209.  Thus, the "I Got It" and "No Guidance" musical works are core subjects of copyright law.  See 17 U.S.C. §§ 102(a)(2), (7).

Moreover, Plaintiffs' state-law claims are similarly "premised on the allegation that [Google] hosted the infringing work[s], the same conduct Plaintiff[s] assert[] supports [their] copyright claim."  Paypal, 2017 WL 3508759, at *8.  Plaintiffs' copyright claims, by comparison, suggest that Google's alleged hosting of "No Guidance" on YouTube violated their exclusive rights under 17 U.S.C. §§ 106(1), (3)-(6) to "reproduce[]," distribute[]," "publicly perform[]," and "display[]" Plaintiffs' work.  See ECF 1, Compl. ¶¶ 116, 130.  Thus, all of Plaintiffs' state-law claims (with the exception of Count 5) explicitly premise liability on the same conduct that underlies Plaintiffs' copyright infringement claims and seek to enforce rights equivalent to—or not qualitatively different from—rights protected under copyright law.

The majority of Plaintiffs' state-law claims are copyright claims in disguise and therefore preempted by the Copyright Act.[4]  The Court's analysis below specifically demonstrates why

---

[4] Plaintiffs' state-law claims are also barred by § 230 of the Communications Decency Act insofar as they are based on the temporary removal of Stephens' YouTube channel and/or comparison video.  See 47 U.S.C. § 230 (providing broad immunity to online platforms from civil liability for content posted by third-party users and shielding interactive computer services from being treated as the "publisher" or "speaker" of information provided by another while protecting "good faith" efforts to restrict access to objectionable material); see also Hall v. YouTube, LLC, No. 24-4071, 2025 WL 1482007, at *7 (N.D. Cal. May 5, 2025) ("[the plaintiff's] allegations are premised on YouTube's decisions to allow or disallow specific videos and to host or shut down channels, which all falls squarely within [§] 230 immunity"); Parker, 242 F. App'x at 838 (affirming order barring defamation, invasion of privacy, and negligence claims against Google pursuant to § 230 because those claims arose from the plaintiff's allegations that Google failed to address harmful content posted by others against the plaintiff on the internet and the plaintiff did not assert that Google was the information content provider of the statements at issue); Green v. America Online (AOL), 318 F.3d 465, 471 (3d Cir. 2003) (emphasizing § 230 bars lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content) (internal quotation marks and citations omitted).

Plaintiffs have not, as a matter of law, alleged state-law claims that contain an extra element making them qualitatively different from their copyright infringement claims.

### i. Unjust Enrichment Claim (Count 4)

Plaintiffs, without explaining how or why, arbitrarily contend that, "based on the facts described herein," Defendants have been "unjustly enriched at the expense of Plaintiffs." Defendant responds that this claim is preempted by the Copyright Act.

"Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to the rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted." Video Pipeline, 210 F. Supp. 2d at 567.

Here, Plaintiffs' unjust enrichment claim appears to allege Google was unjustly enriched by hosting the allegedly infringing content on YouTube and thus seeks to recover the same purported damages as Plaintiffs' copyright claims. See e.g., ECF 1, Compl. ¶ 121. Plaintiffs' unjust enrichment claim therefore seeks compensation for Defendants "having profited from the use of [Plaintiffs' work] and thus seeks to protect the same rights as those protected by the Copyright Act." Visual Communs. Inc. v. Assurex Health, Inc., No. 14-3854, 2014 WL 4662474, at *9 (E.D. Pa. Sept. 18, 2014).

Accordingly, the unjust enrichment claim fails the extra element test and is preempted by the Copyright Act. See Bradstreet, 307 F.3d at 217; see also Hian v. Louis Vuitton USA Inc., No. 22-3742, 2024 WL 3237591, at *7–8 (E.D. Pa. June 28, 2024) (unjust enrichment claim preempted by Copyright Act because claim failed the extra element test); Harris v. Winfrey, No. 10-5655, 2011 WL 1003807, at *10 (E.D. Pa. Mar. 18, 2011) (unjust enrichment claim preempted by Copyright Act where "[the] [p]laintiffs' claims for . . . unjust enrichment do not require proof of an extra element beyond 'mere copying,' and are substantively indistinguishable from plaintiffs' claim for copyright infringement").

Plaintiffs' state-law claim for unjust enrichment is therefore dismissed on preemption grounds.

### ii. IIED, NIED, Breach of Contract, and Breach of Fidicuairy Duty Claims (Counts 6–8)

Plaintiffs argue their emotional distress (Count 6), breach of contract (Count 7), and breach of fiduciary duty (Count 8) claims are not preempted by the Copyright Act because they contain "extra elements" distinct from their copyright claims. Plaintiff, however, do not explain what that extra elements are. Defendant responds that these state-law claims are preempted because they are copyright claims with a different label.

To state a claim for IIED, a plaintiff must allege: (1) outrageous conduct; (2) proximate cause; and (3) severe emotional distress. See Han v. Kwak's Wellness, LLC, No. 08- 2677, 2009 WL 1444639, at *3 (D.N.J. May 20, 2009) (citing Young v. Hobart West Grp., 897 A.2d 1063, 1074 (N.J. Super. Ct. App. Div. 2005)). Similarly, to state a claim for NIED, a plaintiff must allege: (1) the defendant owed a duty of reasonable care to plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's breach of duty

was the proximate cause of the injury.  See Russo v. Nagel, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003) (citation omitted).

To state a claim for breach of contract, a plaintiff must allege: (1) there exists a valid contract; (2) defective performance by the defendant; and (3) and resulting damages.  See Zelnick v. Morristown-Beard Sch., 137 A.3d 560, 566 (N.J. Super. Ct. App. Div. 2015) (internal quotation marks and citation omitted).  Likewise, to state a claim for breach of fiduciary duty, a plaintiff must allege: (1) a fiduciary duty existed between [the plaintiff and the defendant]; (2) the defendant breached that duty; and (3) damages as a result of the breach.  See Rapaport v. Robin S. Weingast & Assocs., 859 F. Supp. 2d 706, 717 (D.N.J. 2012) (citations omitted).

Here, Plaintiffs' emotional distress, breach of contract, and breach of fiduciary duty claims explicitly premise liability on Google's supposed violation of "a duty of care to protect [Plaintiffs'] copyrighted work," and allegedly "negligent" or "intentional" conduct in failing to "thoroughly conduct an investigation of copyright infringement."  See e.g., ECF 1, Compl. ¶¶ 167–68 (IIED), 176-77 (NIED), 182–83 (breach of contract), 188–89 (breach of fiduciary duty).

Because these claims arise from the same underlying conduct as Plaintiffs' copyright infringement claims, they are preempted by the Copyright Act.  See Mills v. Alphabet Inc., No. 16-4669, 2018 WL 1569838, at *7 (S.D.N.Y. Mar. 28, 2018) (IIED and NIED claims preempted where they "arise from the same underlying conduct as [the plaintiff's] copyright infringement claim"); Parker v. Yahoo!, Inc., 07-2757, 2008 WL 4410095, at *6 (E.D. Pa. Sept. 25, 2008) (breach of contract claim preempted where it "create[d] rights equivalent to the exclusive rights created by copyright"); Mortg. Market Guide, LLC v. Freedman Report, LLC, No. 06-140, 2008 WL 2991570, at *40 (D.N.J. July 28, 2008) (similar); Beautiful Slides, Inc. v. Allen, No. 17-1091, 2017 WL 3782304, at *3–4 (N.D. Cal. Aug. 31, 2017) (breach of fiduciary duty claim preempted).

Accordingly, Plaintiffs' state-law claims for emotional distress, breach of contract, and breach of fiduciary duty are dismissed on preemption grounds.

### iii. Common Law Fraud Claim (Count 9)

Plaintiffs contend in a conclusory fashion that Defendants' actions were "fraudulent, malicious, and oppressive."  Defendants respond that this state-law claim is preempted because the underlying allegations were derived from Defendants' alleged unauthorized reproduction and distribution of "I Got It."

To state a claim for common law fraud, a plaintiff must allege: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  See Siegmeister v. Benford, No. 15-7099, 2017 WL 2399573, at *6 (D.N.J. June 1, 2017) (citation omitted).  Thus, a state-law fraud claim requires proof of misrepresentation which, in certain circumstances, could constitute an extra element that distinguishes the claim from the copyright infringement cause of action.  See Giddings v. Vison House Prod., Inc., No. 05-2963, 2007 WL 2274800, *3 (D. Ariz. Aug. 7, 2007) (explaining that, in order to survive preemption, the misrepresentation must be based on a core of allegations dissimilar from those on which the copyright infringement claim is based).  This is consistent with Congressional intent that "the general law[] of . . . fraud, would remain unaffected as long as the

causes of action contain elements . . . that are different in kind from copyright infringement." H.R. Rep. No. 94-1476, at 132 (1976).

Here, Plaintiffs do not plausibly allege the element of misrepresentation that distinguishes this claim from one based on copyright. Even more, Plaintiffs' fraud claim is rooted in Defendants' alleged deception or falsity with respect to passively hosting, or not removing, "No Guidance" from YouTube. This allegation is derived from Defendants' alleged unauthorized reproduction or distribution of "I Got It" and thus is not qualitatively different from Plaintiffs' copyright infringement claims.

As such, Plaintiffs' state-law fraud claim is dismissed on preemption grounds.

### iv. Conversion Claim (Count 11)

Plaintiffs assert Defendants "interfere[ed] with Plaintiffs' registered copyright" by not removing "No Guidance" from YouTube, and thus there was an "unauthorized act of dominion" to Plaintiffs' detriment. Defendants respond this state-law claim is preempted because it is predicated on the same underlying conduct and seeks the same damages as Plaintiffs' copyright claims.

Conversion is an "act of willful interference with the dominion and control over a chattel done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." Baram v. Farugia, 606 F.2d 42, 43 (3d Cir. 1979).

District courts within the Third Circuit have found that the Copyright Act preempts state-law conversion claims regarding copyrighted property. See e.g., Winstead v. Jackson, No. 10-5783, 2011 WL 4407450, at *3–4 (D.N.J. Sept. 20, 2011), aff'd, 509 F. App'x 139, 145 (3d Cir. 2013) (conversion claim preempted by the Copyright Act because the plaintiff failed to distinguish the underlying factual predicate of his infringement claims with that of his state-law claims); In Gemel Precision Tool Co., Inc. v. Pharma Tool Corp., No. 94-5305, 1995 WL 71243, at *6 (E.D. Pa. Feb. 13, 1995) (conversion claim preempted by the Copyright Act because it was "substantively similar to [the] [p]laintiff's claim for copyright infringement"); Sullivan Assoc.'s, Inc. v. Dellots, Inc., No. 97-5457, 1997 WL 778976, at *5 (E.D. Pa. Dec. 17, 1997) (conversion claim preempted by the Copyright Act because it was "identical to [the plaintiff's] exclusive right to copy, to create derivative works from, and to distribute the copyrighted materials") (citation omitted); cf. In Apparel Bus. Sys., LLC v. Tom James Co., No. 06-1092, 2008 WL 858754, at *18, n.9 (E.D. Pa. Mar. 28, 2008) (finding the plaintiff's conversion claim arises from the alleged copying and misuse of the work making it functionally equivalent to a copyright claim, and the plaintiff's claim did not have an extra element that took it beyond the scope of copyright protection).

Indeed, district courts within the Third Circuit have found limited situations in which a conversion claim is not preempted by the Copyright Act. See e.g., Peirson v. Clemens, Inc., No. 03-1145, 2005 WL 681309, at *3 (D. Del. Mar. 23, 2005) (holding that conversion of the physical embodiment of a copyright work was not preempted by the Copyright Act) (emphasis added); Stenograph, L.L.C. v. Sims, No. 99-5354, 2000 WL 964748, at *3 (E.D. Pa. July 12, 2000) (holding that a conversion claim involving unlawful possession of a software key that must be physically inserted into a stenography machine to use the software is not preempted) (emphasis added); see also Gemel, 1995 WL 71243, at *6 (explaining in dicta that had the defendants

removed non-copyrighted materials from the plaintiff's physical premises, § 301 would not preempt an action for conversion of those items or information) (emphasis added).

Here, Plaintiffs' conversion claim is preempted because it seeks to hold Google liable for "interfering with Plaintiffs' registered copyright" by not "taking down the . . . [allegedly] infringing video," and for "convert[ing] Plaintiffs' ad revenue" and "intellectual property rights." See e.g., ECF 1, Compl. ¶¶ 206–07. Like in Sullivan, Gemel, and Tom James, Plaintiffs' conversion claim arises from the same underlying conduct as Plaintiffs' copyright infringement claim, thereby making it functionally equivalent to a copyright claim. Further, unlike Peirson, Sims, and Gemel, Plaintiffs' conversion claim fails to allege the existence of a physical embodiment of a copyrighted work. Thus, Plaintiffs fail to allege an extra element that takes their conversion claim beyond the scope of copyright protection.

Plaintiffs' state-law conversion claim is therefore dismissed on preemption grounds.[5]

### C. Defamation (Count 5)

Plaintiffs assert that YouTube's "libelous and slanderous statements" in response to Stephens' DMCA takedown notice constituted defamation per se because they were "made with knowledge that no investigation supported the unsubstantiated and . . . false statements." Plaintiffs generally maintain Defendants' statements "were made with malice, and ill will towards . . . Plaintiffs, with a design and intent to injure Plaintiffs' good name, reputation, business, employment, and future employment." Defendants respond that Google did not publish any of the at-issue statements to a third party, none of the statements are defamatory, and Plaintiffs do not plausibly allege damages.

To state a claim for defamation, a plaintiff must show a defendant: (1) made a false and defamatory statement concerning the plaintiff; (2) communicated the statement to a third party; (3) had a sufficient degree of fault; and (4) damages.[6] See Cruz v. HSBC, No. 10-135, 2010 WL 2989987, at *2 (D.N.J. July 26, 2010); Robles v. U.S. Env't Univ. Servs., Inc., 469 F. App'x 104, 109 (3d Cir. 2012). A defamatory statement is "one that is false and injurious to the reputation of another or exposes another person to hatred, contempt or ridicule or subjects another person to a loss of the good will and confidence [of] . . . others." Romaine v. Kallinger, 537 A.2d 284, 287 (N.J. 1988) (internal citations omitted).

Another component of a statement's defamatory nature—and thus an element of a prima facie case—is that a plaintiff must have been harmed by the alleged defamation. See Ward, 643 A.2d at 984; Rocci v. Ecole Secondaire MacDonald-Cartier, 731 A.2d 1205, 1210 (N.J. Super. Ct.

---

[5] Having determined that the Copyright Act preempts and necessitates the dismissal of most state-law claims—with the exception of Count 5—the Court declines to address Defendants' alternative arguments regarding the sufficiency of those claims under Rule 12(b)(6).

[6] The need to demonstrate damages is waived when the defamation is oral and can be categorized as slander per se. In such a case, damages are presumed. See Ward v. Zelikovsky, 643 A.2d 972, 984 (N.J. 1994). Four kinds of statements qualify as slander per se: accusing another (1) of having committed a criminal offense, (2) of having a loathsome disease, (3) of engaging in conduct or having a condition or trait incompatible with his or her business, or (4) of having engaged in serious sexual misconduct. Biondi v. Nassimos, 692 A.2d 103, 106 (N.J. Super. Ct. App. Div. 1997). Although Plaintiffs frame this cause of action as defamation per se, none of the at-issue statements fall into these four categories. As such, the Court interprets Plaintiffs' cause of action as a traditional defamation claim.

App. Div. 1999). It is not sufficient that a plaintiff's own feelings were hurt or that they suffered embarrassment. See Ward, 643 A.2d at 985; Rocci, 731 A.2d at 1210. Rather, the focus is on the effect of the alleged defamatory statement on a third person, i.e., whether the third person viewed the plaintiff in a lesser light as a result of hearing or reading the offending statement. See Arturi v. Tiebie, 179 A.2d 539, 542 (N.J. Super. Ct. App. Div. 1962); Scelfo v. Rutgers Univ., 282 A.2d 445, 449 (N.J. Law Div. 1971).

First, Plaintiffs fail to identify any defamatory statement(s) made by Defendants. Plaintiffs' defamation claim is solely based on DMCA-related emails exchanged between Google and Stephens. See e.g., ECF 1, Compl. ¶¶ 87 ("We are concerned that some of the info in your takedown request may be fraudulent"); 89 ("We are concerned that some info within this legal request may be fraudulent"); 93 ("Hello, [y]our account has been suspended for submitting abusive legal requests and will not be reinstated"). The first two of these statements are mere opinions and thus do not constitute "defamatory statements." See McLaughlin v. Rosanio, Bailets & Talamo, 751 A.2d 1066, 1071 (N.J. Super. Ct. App. Div. 2000) (noting only verifiable statements can be defamatory and since opinions cannot be proved true or false, they are not actionable). The third statement is factual and truthful and not "defamatory" in any sense of the word. See id. (emphasizing recovery is limited to defamatory false averments of fact and the truth of the statement is a complete defense to a defamation action).

Second, Plaintiffs fail to allege a false and defamatory statement was communicated to a third party. "Since the law of defamation seeks to secure reputation, there must be a communication to a third person." 30 River Court East Urban Renewal Co. v. Capograsso, 892 A.2d 711, 715 (N.J. Super. Ct. App. Div. 2006) (citation omitted). Here, Defendants did not publish any of the at-issue statements to third parties; they were made solely to Stephens via private emails in response to Stephens' DMCA requests. See ECF No. 1, Compl., Exs. 12, 14, 18. Rather, Stephens—not Defendants—published the statements to third parties when he forwarded the communications to several of the dismissed defendants and their attorneys. See Compl. ¶ 94 ("Marc Stephens sent an email to the Defendants . . . ."); id. at Ex. 19 (forwarded email from Stephens to various defendants). This alone requires dismissal. See Mehta v. Fairleigh Dickinson Univ., No. 09-0455, 2012 WL 458421, at *10 (D.N.J. Feb. 9, 2012) (dismissing defamation claim because the statements at issue were not communicated to a person or persons other than the plaintiff).

Lastly, Plaintiffs fail to demonstrate they suffered any damages. While Plaintiffs generally allege Defendants' statements caused them reputational harm, see ECF 1, Compl. ¶¶ 145, 151, 158–59, 161, 163, Plaintiffs fail to show how Defendants' statements caused them reputational harm or allege any facts concerning the alleged harm, warranting dismissal as a matter of law. See Bello v. United Pan Am Financial Corp., No. 19-9118, 2021 WL 2549243, at *3 (D.N.J. June 22, 2021) (dismissing the plaintiff's defamation claim because there was "no allegation of harm, pecuniary or reputational, stemming from the alleged defamatory statement"); HV Assoc.'s LLC v. PNC Bank, N.A., No. 17-8128, 2018 WL 1243984, at *7 (D.N.J. Mar. 8, 2018) (dismissing the plaintiff's defamation claim because the complaint did not contain sufficient factual allegations that the defendant made false, defamatory statements regarding the plaintiffs and the plaintiffs impermissibly relied on legal conclusions); cf. Soobzokov v. Lichtblau, No. 15-6831, 2016 WL 614411, at *3 (D.N.J. Feb. 16, 2016) (dismissing the plaintiff's defamation claim for failure to state a claim).

Accordingly, Plaintiffs' defamation claim is dismissed.

IV. **CONCLUSION**

For these reasons, Defendants' Motion, ECF No. 61, is **GRANTED**; and Plaintiffs' Complaint, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE**.  Only to the extent Plaintiffs can cure the deficiencies identified in this Order, Plaintiffs may file an amended complaint within thirty (30) days from entry of this Order.  If an amended complaint is not filed within 30 days, Defendants can request that this matter be dismissed with prejudice.  The Clerk of Court is directed to serve a copy of this Order upon Plaintiffs via certified mail and electronic mail.  All pending motions or filings requesting relief in this case are hereby administratively terminated.

**SO ORDERED**.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**